BEACON MANUFACTURING COMPANY *vs.* BARNARD MANU-
FACTURING COMPANY.

Bristol.   October 24, 1927.— November 23, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Practice, Civil,* Law of the case.   *Law of the Case.*   *Contract,* Construction,
Performance and breach, Implied, Rescission.   *Sale,* Warranty, Accept-
ance, By sample.

If a judge, hearing without a jury an action for damages resulting from the
alleged breach of a contract for the sale of certain merchandise by the
defendant to the plaintiff, on evidence introduced for the limited pur-
pose of interpreting the terms of documents evidencing the contract,
makes, as to the meaning of certain words in one of the documents, a
ruling to which no exception is saved, such ruling becomes the law of
the case with respect to the matter to which it is directed.

At the hearing by a judge without a jury of an action upon a contract for
sale of yarn by the defendant to the plaintiff, it appeared that the sale
was subject to approval of a sample bobbin; that the defendant sent a
sample bobbin to the plaintiff, on receipt of which the plaintiff wrote the
defendant that "same appears to be very satisfactory.   We would say
that we require breaking strength of 80 lbs."   Thereafter the defend-
ant sent the plaintiff a quantity of yarn which the plaintiff paid for and
"put to work," processing it through a creel, a slashing machine, and a
starching process, and made it up into warps for looms, and put some
into the looms.   The plaintiff then made a test which was unsatisfactory
as to strength and refused the remainder of the order.   The declaration
was in two counts, the first count being for damages for breach of an
agreement by the defendant to furnish yarn, and the second count being
for a return of the purchase price of the quantity which the defendant
had furnished and the plaintiff had paid for.   The judge found that
the plaintiff approved the sample and found for the plaintiff on both
counts.   The defendant alleged exceptions.   *Held,* that
   (1) The finding that the plaintiff approved the sample was not
warranted;
   (2) As the defendant incurred no obligation to the plaintiff until
the sample had been approved, the finding for the plaintiff on the first
count was not warranted;

(3) The yarn received by the plaintiff having been processed and having lost its character as yarn, thus preventing its return in the form of cotton yarn, the plaintiff was not entitled to a return of the money that was paid for it.

(4) Judgment was ordered for the defendant under G. L. c. 231, § 122.

CONTRACT for breach of an agreement for the sale of yarn by the defendant to the plaintiff. Writ dated April 21, 1923.

The defendant filed a document entitled a declaration in set-off based on the same contract as set forth in the declaration, and claimed damages which were not specified to be liquidated.

The action was heard by *Gray*, J., without a jury. Material evidence and rulings by the judge are stated in the opinion. The judge found for the plaintiff on the first count in the sum of $11,700 and on the second count in the sum of $1,604.80. The defendant alleged exceptions.

*A. S. Phillips*, for the defendant.

*T. F. O'Brien*, for the plaintiff.

PIERCE, J. This is an action of contract. The pleadings are made a part of the bill of exceptions, and all facts and evidence material to the exceptions saved are reported.

At the close of the evidence at a hearing before a judge of the Superior Court, sitting without a jury, the defendant duly excepted "to the refusal of the court to rule that upon all the evidence a verdict should be entered for defendant."

The evidence warranted a finding that the defendant and the plaintiff on or about September 27, 1922, through their respective brokers entered into a contract for the sale by the defendant to the plaintiff of 100,000 pounds of No. 22/1 carded cotton yarn, the terms of which are found in a document signed by Robert K. Remington, broker for the defendant, which he delivered to the defendant and to Henry E. Sayward, broker for the plaintiff. The document thus delivered is set out in the defendant's declaration in set-off, and is found by the trial judge to be the contract between the parties, as alleged by the defendant. So far as is pertinent to any matter now in issue, that document reads as follows: "9/27/22   Sold for Account of Barnard Mfg. Co., Fall River, Mass., to Beacon Mfg. Co., New Bedford, Mass.   100,000 pounds of 22/1 Carded Cotton Yarn, 22/1 Warp Twist Yarn

on 54″. Section Beams as previously had. Description to be given by customer. Sale approval of sample bobbin to be submitted to customer for quality. Also subject to warping on first set shipped. 6,000 to 8,000 lbs. weekly beginning in 4/6 weeks At 38c per pound. TERMS: 2% 10th prox., DELIVERY: Prepaid. COMMISSION 1/2c per lb. Shipping Directions: Beacon Mfg. Co., New Bedford, Mass. If the production of the seller's mills shall be curtailed during the time above named by strikes or lock-outs to counteract strikes or any unavoidable casualty, deliveries shall be made only in proportion to production. Robert K. Remington, BROKER."

Thereafter the plaintiff received from the defendant the following letter: "September 27, 1922. Gentlemen: As requested by Mr. Robert K. Remington, we are sending you a sample of our 18/1 for approval on contract for 22/1." By letter dated September 30, 1922, the plaintiff replied: "We are in receipt of the sample bobbin of 18's yarn sent by you and same appears to be very satisfactory. We would say that we require breaking strength of 80 lbs. in our 22's." On October 31, 1922, the defendant sent the plaintiff a quantity of yarn, with bill of the same date for $1,399.54, payable on the tenth of the following month, less two per cent, for nine beams No. 22/1 carded warp, net 3,683 pounds at $.38 per pound. The plaintiff took the discount and paid the defendant $1,371.61.

The yarn received October 31, 1922, was "put to work" prior to November 6, 1922. It was run through a creel, then through a slashing machine, then through a starching process, which is called the sizing process; then it went onto the loom beams, which consist of eight to ten second beams combined into one loom beam; then it was made up into warps for the looms and put up in some looms. A test was then made of the breaking strength in the yarn. As a result of the test the plaintiff wrote the defendant a letter dated November 6, 1922, which reads; "We have just put into work the first set of yarn received from you and find that the yarn has not enough twist and is consequently giving us a great deal of trouble to run. Kindly see that this trouble is remedied."

The defendant, on November 7, 1922, replied: "Yours of the 6th at hand, and contents noted. This set of yarn was delivered to you for approval on contract of Sept. 27th, and before we run any more of this we would thank you to let us know if it is satisfactory." On November 8 the plaintiff wrote the defendant: "Yours of November 7th received; we do not know how we could tell you more plainly than in our letter of November 6th that the yarn is not satisfactory as shown by the first set sent us. It is necessary for you to put more twist in the yarn to give us more strength before it is satisfactory."

November 9, the defendant through its superintendent wrote the plaintiff: "Replying to yours of the 8th, and confirming telephone conversation, I am sending you by parcel post, 4 bobbins of 22/1 yarn which shows the increased twist. Please let us hear from you as soon as possible." The telephone conversation referred to was between the purchasing agent of the plaintiff and the defendant's superintendent and warrantably could have been found to have been, in substance, that the agent said "that the yarn received from the defendant on this contract was of very inferior quality and could not be used under the contract; that . . . [the plaintiff] did not want it and would not have it; that . . . [the superintendent] replied that . . . [the defendant] had no intention when . . . [it] placed the contract of supplying yarn equal to that plaintiff had formerly received as at the price of the contract . . . [it] could not come out even if the former quality was to be made. . . . the main thing said was that . . . [the defendant] would not supply yarn of the quality . . . [the plaintiff] formerly had, and . . . [the plaintiff] said . . . [it] would not accept any such yarn as . . . [the defendant] had shipped and would look to . . . [the defendant] to furnish yarn according to the contract as . . . [the plaintiff] understood it. Referring to what was to be furnished, . . . [the agent] told . . . [the defendant's superintendent] that he wanted yarn of the same quality as before"; and said, referring to the last yarn sent, "we . . . [do] not want it." There were no more demands, submissions or correspondence till this action was brought on

April 21, 1923.   About November 21, 1922, the plaintiff bought 100,000 pounds of yarn to take the place of this contract, and paid forty-eight cents a pound for it.   The first count of the declaration is to recover the difference between the contract price, thirty-eight cents, and the price paid, forty-eight cents, in the purchase of replacement cotton yarn.   The second count seeks to recover as damages the price paid the defendant on its bill for cotton yarn sent on approval September 27, 1922.

On evidence introduced for the limited purpose of interpreting the terms of the documents signed by the broker, the judge ruled that the words "as previously had" in the clause, "100,000 pounds of 22/1 Carded Cotton Yarn, 22/1 Warp Twist Yarn on 54". Section Beams as previously had," are not a warranty of the quality of the yarn to be delivered, but that the "quality of the yarn is covered by that part of the contract which provides that the sale is subject to approval of sample bobbin to be submitted to customer for quality."   This ruling is not excepted to and consequently is the law of the case as to the matter to which it was directed.   It was agreed by counsel for the plaintiff and defendant that the words of the document, "Sale approval of sample bobbin," mean "Sale subject to approval" of sample bobbin.

The finding by the judge that the "plaintiff approved said sample" is not supported by the reported evidence, which is, in substance, that the plaintiff accepted the "quality" of the yarn as shown in the 18/1 yarn sample bobbin in so far as that bobbin showed the color of the yarn and the cotton in the yarn, but did not accept it as to the breaking strength because that element of the quality of cotton yarn "could not be shown in a different number."   No sample bobbins were ever approved by the plaintiff, and the plaintiff declared it would not accept any such yarn as the defendant had shipped.

It is plain the defendant by its contract incurred no obligation to the plaintiff to deliver to it any yarn before a sample bobbin was approved by the plaintiff; that approval was never given, and the parties never agreed upon any

description of the subject of the proposed purchase and sale. As there was no breach of the contract by the defendant the plaintiff had no right of action to recover damages for an alleged breach. The exception of the defendant to the refusal by the judge to rule that upon all the evidence a verdict (judgment) should be entered for the defendant must be sustained.

Request numbered 9, that "Upon all the evidence the Beacon Company cannot prevail upon the second count in its declaration," should have been given. The cotton yarn, 3,683 pounds which was delivered to the plaintiff on October 31, 1922, for approval, was "put to work" prior to November 6, 1922, without any examination of it, or of a sample of it, for strength, upon a machine made "for that purpose." On November 6, as appears by the letter of the plaintiff to the defendant, *supra*, the plaintiff ascertained that the yarn then in process of manufacture into cloth had not enough twist and was giving a great deal of trouble to run, and requested that this trouble be remedied. The request, presumably, was directed to the quality of yarn to be delivered if the yarn delivered for approval should be found satisfactory in other respects by the plaintiff. The processing, to which all the yarn delivered for approval on October 31, 1922, was put, destroyed its character as cotton yarn and prevented its return in that character to the defendant. The plaintiff having accepted the yarn for the purpose of testing its quality, and having voluntarily paid for it, cannot now, after its character has been destroyed and it has become unfit for any practical use in its mill, recover in any form of action the money it has paid.

> *Exceptions sustained.*
> *Judgment for defendant under*
> *G. L. c. 231, § 122.*