ANNETTE JOAN TOCZKO, administratrix, *vs.* ANTHONY J. ARMENTANO, administrator.

Hampshire.    September 30, 1960. — December 2, 1960.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

*Jurisdiction,* Foreign personal representative, By consent or waiver, By operation of motor vehicle. *Executor and Administrator,* Foreign, Limitation of actions. *Motor Vehicle,* Registrar as statutory agent. *Constitutional Law,* Due process of law, Equal protection of laws, Police power. *Agency,* Registrar of motor vehicles, Termination. *Limitations, Statute of.* *Practice, Civil,* Service of process, Premature action, Judicial discretion, New trial, Damages. *Negligence,* Gross, Motor vehicle. *Damages,* For death, For conscious suffering.

St. 1952, c. 125, amending G. L. c. 90, § 3A, by adding, to the provision that the operation by a nonresident of a motor vehicle on a Massachusetts highway "shall be deemed equivalent to an appointment by him of the registrar . . . [of motor vehicles] to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him" growing out of any accident during such operation, the words "or against his executor or administrator," aided the intent of the original § 3A to bring within the jurisdiction of Massachusetts courts actions by persons injured through such operation, was enacted under the police power, and was not in violation of § 1 of the Fourteenth Amendment to the Constitution of the United States as a deprivation of property without due process of law or as a denial of equal protection of the laws.    [477–478]

The jurisdiction acquired under G. L. c. 90, § 3A, over a nonresident through his operation of a motor vehicle on a Massachusetts highway is jurisdiction by consent.    [478]

Toczko *v.* Armentano.

An appointment under G. L. c. 90, § 3A, as appearing in St. 1953, c. 366, § 1, by a nonresident operator of a motor vehicle on a Massachusetts highway of the registrar of motor vehicles to be the operator's attorney for the service of process against him was irrevocable and did not terminate with the operator's death since it was made, not for the operator's benefit, but for the benefit of third persons. [478]

G. L. c. 197, § 1, applies only to actions against Massachusetts executors and administrators, so that an action here against the foreign administrator of a nonresident, growing out of an accident in which the nonresident was involved while operating a motor vehicle here, was not premature although commenced within six months after the administrator's appointment. [479]

A finding of gross negligence on the part of the operator of an automobile toward a guest riding therein who was injured when it struck a telephone pole at the side of a road at night was warranted by evidence that the operator was angry at the start of a ride of thirty to forty-five minutes to the point of the accident and during the ride got angrier, got "tough," drove faster all the time despite three or four warnings from his passengers, and "more or less" lost control, and that after the automobile came off a bridge at sixty to sixty-five miles per hour it zigzagged and hit the curbing and then the pole with great force, even if there was no evidence that the operator was inattentive to his driving. [480–481]

In an action for death under G. L. c. 229, § 2C, as appearing in St. 1951, c. 250, a verdict for the plaintiff for the maximum amount of $20,000 provided by the statute was permissible although it was based only on negligence and the defendant was not charged with any "wilful, wanton or reckless act." [481–482]

At the trial of an action to recover for the conscious suffering of one who died in a hospital eighty-five minutes after he was injured when an automobile in which he was a passenger struck a telephone pole with great force, testimony of a medical examiner who saw the accident that the passenger "suffered" all during that time precluded a ruling that a verdict of $7,500 was excessive as matter of law, notwithstanding further testimony of the witness as to the effects of a sedative which he gave the passenger. [482]

Tort. Writ in the Superior Court dated August 16, 1954. The action was tried before *Broadhurst, J.*

*Edward M. Dangel, (Sebastian J. Ruggeri* with him,) for the plaintiff.

*William H. Welch, (Edward L. O'Brien* with him,) for the defendant.

Wilkins, C.J. The plaintiff is the administratrix of the estate of her husband, Adolph John Toczko, late of Hatfield, by appointment of the Probate Court for Hampshire

County.   The defendant, on July 1, 1954, was appointed administrator of the estate of Edward S. Young, late of Enfield in the State of Connecticut, by the Probate Court for the county of Hartford in that State.   The defendant holds no appointment in this Commonwealth.   Although the fact does not appear in the record, both briefs state that there are no assets formerly of Young in this Commonwealth.   This action of tort by writ dated August 16, 1954, is to recover for the death and conscious suffering of the plaintiff's intestate, who on December 13, 1953, was a social guest in an automobile, registered in Connecticut, owned by the defendant's intestate, and operated by the latter on a public way in Athol, where it struck a telephone pole.

The jury returned verdicts for the plaintiff: (1) $21,016.61 on count 1 for death, and (2) $7,500 on count 3 for conscious suffering due to gross negligence.   Under leave reserved the trial judge entered a verdict for the defendant on each count.   Both parties allege exceptions.

1.   According to the sheriff's return, service of the writ was made upon the registrar of motor vehicles.   The defendant appeared generally.   Inasmuch as this opinion upholds the validity of that service, the effect of the general appearance needs no separate discussion.   During the trial the defendant filed a plea to the jurisdiction which was overruled.   The plea alleged, in part, that service was made by sending him notice by registered mail as provided in G. L. c. 90, §§ 3A and 3C, and that these statutes, in so far as they provide for service and jurisdiction over a nonresident executor or administrator, are in violation of § 1 of the Fourteenth Amendment to the Constitution of the United States.   General Laws c. 90, § 3A, as appearing in St. 1953, c. 366, § 1,[1] provided: "The acceptance by a person who is a resident of any other state . . . of the rights and privileges conferred by section three, as evidenced by the operation, by himself or agent, of a motor vehicle thereunder, or the operation by such a person, by himself or his agent, of a motor vehicle on a way . . . in this common-

---

[1] A later amendment does not apply to this case.   St. 1955, c. 196, § 1.

wealth otherwise than under said section, shall be deemed equivalent to an appointment by him of the registrar . . . to be his true and lawful attorney upon whom may be served all lawful processes in any action or proceeding against him or his executor or administrator, growing out of any accident or collision in which such person or his agent may be involved while operating a motor vehicle on such way . . . and said acceptance or operation shall be a signification of his agreement that any such process against him, or his executor or administrator, which is so served shall be of the same legal force and validity as if served on him personally.''

Reference to the executor or administrator of a deceased operator was introduced into § 3A by St. 1952, c. 125. The defendant urges that this amendment is unconstitutional as a deprivation of property without due process of law and as a denial of the equal protection of the laws. He relies upon the general proposition that the appointment of an executor or administrator in one State is without force in another. See Newhall, Settlement of Estates (4th ed.) § 69. He argues that in this Commonwealth a foreign administrator cannot sue (*Brown* v. *Boston & Maine R.R.* 283 Mass. 192, 195) or be sued. *Beaman* v. *Elliot,* 10 Cush. 172, 173. See Restatement: Conflict of Laws, § 512.

Such considerations are presently irrelevant. The purpose of the amendment of § 3A by St. 1952, c. 125, was to fill a loophole. See *State* v. *Davison,* 216 Wis. 216, 223, and cases collected in notes in 155 A. L. R. 345, 18 A. L. R. 2d 544, and 53 A. L. R. 2d 1194–1196; *Young* v. *Potter Title & Trust Co.* 114 N. J. L. 561, 566. The amendment was in aid of the intent of the original statute. That intent was to assure to one, sustaining injury or damage due to the operation here of an automobile by a nonresident, the opportunity to seek redress in our own courts rather than to be remitted to bringing an action outside the Commonwealth wherever jurisdiction might be found, a circumstance which might render illusory the right to sue. *Pawloski* v. *Hess,* 250 Mass. 22, 24–26, *S. C.* 253 Mass. 478. *Hess* v. *Pawloski,* 274 U. S. 352, 355–356.

It would be an incomplete achievement to leave uncovered the case of a nonresident operator who may not have survived the accident or who, for any reason, may not have lived long enough for trial of the action against him. The statute was enacted under the police power. There is no constitutional provision which prevents our Legislature from authorizing service of process for the purpose of bringing such personal representatives into our courts to answer to the type of case with which we are concerned. This is a jurisdiction based upon consent, which arises from the operation of the automobile within this Commonwealth. The appointment of the registrar as agent for service of process was irrevocable. The agency is not one which terminates with the death of the principal, for it was created not for his benefit but for the benefit of third persons. Restatement 2d: Agency, §§ 120, 139. *Leighton* v. *Roper,* 300 N. Y. 434, 442–443. See *Iovino* v. *Waterson,* 274 F. 2d 41, 47 (2d Cir.), cert. den. sub. nom. *Carlin* v. *Iovino,* 362 U. S. 949. See also *Band* v. *Davis,* 325 Mass. 18, 20–21. As Mr. Justice Brandeis said for the court in *Young* v. *Masci,* 289 U. S. 253, 259, "The power of the State to protect itself and its inhabitants is not limited by the scope of the doctrine of principal and agent."

The defendant relies upon two United States District Court cases, which are contrary to the great weight of authority. See *Knoop* v. *Anderson,* 71 F. Supp. 832, 852 (D. Iowa); *Derrick* v. *New England Greyhound Lines, Inc.* 148 F. Supp. 496, 497 (D. Mass.). The *Knoop* case is criticised in two Federal Court of Appeals cases. *Feinsinger* v. *Bard,* 195 F. 2d 45, 48 (7th Cir.). *Brooks* v. *National Bank,* 251 F. 2d 37, 39 et seq. (8th Cir.). The issues hereinbefore discussed have been carefully considered and disposed of by the New York Court of Appeals in an opinion by Judge Froessel. *Leighton* v. *Roper,* 300 N. Y. 434. Other cases contributing to the great weight of authority are *Oviatt* v. *Garretson,* 205 Ark. 792, *Plopa* v. *DuPre,* 327 Mich. 660, *State* v. *Cross,* 314 S. W. 2d 889 (Mo.), and *Tarczynski* v. *Chicago, Milwaukee, St. Paul & Pac. R.R.* 261 Wis. 149.

It is not within our province to predict what effect would be given by the Connecticut courts to a judgment entered here.

2.   The defendant contends that under G. L. c. 197, § 1, this action is premature because it was brought on August 16, 1954, which was within six months of his appointment as administrator on July 1, 1954.   We are of opinion, however, that c. 197, § 1, applies only to Massachusetts executors and administrators, and that the only applicable statute of limitations might be G. L. c. 260, § 4 (as amended through St. 1943, c. 409, § 4), which, so far as material, provides that "actions of tort for bodily injuries or for death the payment of judgments in which is required to be secured by chapter ninety . . . shall be commenced only within one year next after the cause of action accrues." See *Smith* v. *Pasqualetto*, 146 F. Supp. 680 (D. Mass.). The present action, therefore, was seasonably brought.

Accordingly, there was no error in overruling the plea to the jurisdiction; and the entry of verdicts for the defendant under leave reserved could not rightly have been based upon lack of jurisdiction, if that was a ground of the judge's action.

3.   The defendant contends that there was no evidence of gross negligence.   These facts could have been found. The accident occurred on December 13, 1953, at 1:15 A.M. On the previous day, the plaintiff's intestate, the defendant's intestate, one Kovalchik, and one Kochan were deer hunting at a camp in Wendell.   About 11 P.M. they arrived at a cafe in Orange, where they all had one or two highballs. They made the acquaintance of a man who with his fiancee and sister came over to their table.   The defendant's intestate danced with the sister.   About 12:30 or 12:45 A.M. all seven went to a diner in Athol, and finding this closed, decided to go to the camp in Wendell to have something to eat.   The plaintiff's intestate and Kovalchik rode with the defendant's intestate, Kovalchik on the back seat and the plaintiff's intestate on the front.   To show the way, Kochan rode in another car with the other man and the two

girls. The defendant's intestate wanted to ride in that car instead of Kochan. "After starting up, the defendant's intestate became angry and began to speed." He "kept on his side of the road until he came to the bridge, and from there on the car started to sway. He was getting 'tough,' was more or less losing control. He was getting madder and going faster all the time. The car was going sixty to sixty-five miles per hour as it came off the bridge." His passengers were telling him to take it easy. They told him three or four times, but he did not. He kept "revving it up." "As the car came off the bridge in a thickly settled district it zigzagged. . . . That is when he started to really sway or careen. He was bobbing and weaving." The road was "sweating," damp with moisture, and starting to freeze. The car went toward the sidewalk, hit the curbing, and struck a telephone pole, which was flush with the side of the road. The car was "wrapped around" the pole in a curved shape so that the motor was driven back by the grille. The front was pushed in. The door on the right was flung around and open. The top was "caved in, buckled back." The plaintiff's intestate was hanging out of the car with his legs caught inside. He was conscious and bleeding, trying to reach the ground. Kovalchik was hanging over the back of the front seat on top of the plaintiff's intestate's leg. It took one half to three quarters of an hour to remove the plaintiff's intestate and the defendant's intestate from the car. The former was taken to a hospital where he died at 2:40 A.M.

It could not have been ruled as matter of law that there was no evidence of gross negligence. The distance of the route traveled from the diner to the point of the accident does not appear, but the time of the drive might have been found to be as long as thirty to forty-five minutes. This would have easily permitted a finding that the driving behavior described was of more than momentary duration. The defendant's case is not bettered by his argument that there was no evidence of inattention. There could have been found a deliberate adherence to a course of unsafe con-

duct and an ignoring of repeated warnings. That is, there could have been a voluntary incurring of an obvious risk and a persistence in a palpably negligent course of conduct over an appreciable period of time. See *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, 172. We have often said that each case depends upon its own particular facts. *Romer* v. *Kaplan,* 315 Mass. 736, 738. *Rosario* v. *Vasconcellos,* 330 Mass. 170, 172. We need not multiply citations. We cite a few cases which point the way to the result we reach. *Dean* v. *Bolduc,* 296 Mass. 15. *Dombrowski* v. *Gedman,* 299 Mass. 87. *Blackman* v. *Coffin,* 300 Mass. 432. *O'Neill* v. *McDonald,* 301 Mass. 256. See *McGaffigan* v. *Kennedy,* 302 Mass. 12, 14–15; *Dinardi* v. *Herook,* 328 Mass. 572.

4. The defendant filed a motion for a new trial, one of the grounds being that the damages awarded on counts 1 and 3 were excessive. The motion was denied, and the defendant excepted.

(a) The question on count 1 is whether a maximum verdict of $20,000 and interest is permissible where the verdict is based on negligence in some degree. The applicable statute is G. L. c. 229, § 2C, as appearing in St. 1951, c. 250,[1] which reads in part: ". . . a person who by his negligence or by his wilful, wanton or reckless act . . . causes the death of a person in the exercise of due care . . . shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability . . . ." The defendant argues that the degree of culpability of one who is not charged with a wilful, wanton, or reckless act cannot be, as matter of law, as high as that of one who is so charged.

What we are asked to do is, in effect, to insert an exception in the statute. If the Legislature had intended that the damages could be assessed at $20,000 only for a wilful, wanton or reckless act, it would have so stated. As a practical matter, should we embark upon the course suggested, we would be required in an appropriate case to fix some

---

[1] See now G. L. c. 229, § 2, as appearing in St. 1958, c. 238, § 1.

other maximum as the damages for conduct which is negligent in some degree. We hardly believe that we, who do not hear evidence, should try to determine whether in any given case the maximum could be $19,999 or must be some lesser figure.

(b) The question on count 3 is whether the verdict of $7,500 for conscious suffering was excessive as matter of law. The evidence most favorable to the plaintiff was that her intestate "suffered from 1:15 A.M. to 2:40 A.M.," a total of eighty-five minutes. This was the express testimony of Dr. Reynolds, who was a medical examiner, and an eye witness to the accident. It was not substantially qualified by his other testimony. This was that he immediately gave the plaintiff's intestate, who asked for help, "a morphine pill by mouth"; that thereafter the intestate "quieted down, but kept complaining"; that "the pill took twenty minutes to a half hour to terminate the pain, but did not stop the pain"; and that he "began to be quiet, but every once in a while the doctor noticed an expression of pain, that something was going on, but he was more quiet after the tablet than he was before."

(c) Each verdict must stand unless to permit it to do so was an abuse of discretion on the part of the trial judge which amounted to an error of law. *Bartley* v. *Phillips,* 317 Mass. 35, 43–44. *Mitchell* v. *Silverstein,* 323 Mass. 239, 241–242. *Alden* v. *Norwood Arena, Inc.* 332 Mass. 267, 273–277. We cannot reach that conclusion as to either verdict.

> *Plaintiff's exceptions sustained.*
> *Defendant's exceptions overruled.*
> *Judgments for the plaintiff on the verdicts.*