CARMELIA M. SAPORITA *vs.* SIDNEY H. LITNER, executor.

Suffolk.   October 9, 1975. — December 31, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Jurisdiction,* Foreign personal representative, Nonresident. *Executor and Administrator,* Foreign representative. *Limitations, Statute of. Law of the Case.*

In a contract action against an executor appointed by a Connecticut court for compensation for services rendered by the plaintiff to the defendant's testator, a Massachusetts court acquired personal juris-diction over the defendant as executor at the time service was made on him in Massachusetts, and he was not shielded from suit as a foreign executor where the testator had lived and worked in Massa-chusetts from 1945 until his death in 1963 and where the contract was made and performed in Massachusetts. [614-619]
Where a defendant filed a timely claim of exception to a judge's denial of his motion to amend his answer but did not file a bill of excep-tions, the judge's ruling became the law of the case, and the judge did not abuse his discretion in denying a subsequent motion to amend the answer. [620]

---

[1] See also G. L. c. 265, § 1.

CONTRACT.    Writ in the Superior Court dated September 8, 1964.

The action was heard by *Tamburello, J.,* on an auditor's report.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Andrew F. Lane (John D. Hanify* with him) for the defendant.

*Joseph J. Hurley* for the plaintiff.

QUIRICO, J.    This is an action in contract for compensation for services allegedly rendered by the plaintiff to the defendant's testator over the period of eighteen years prior to the testator's death in 1963. Judgment was entered for the plaintiff in the amount of $74,921.18. The case is before us on three bills of exceptions filed by the defendant. The basic issue raised by the exceptions is whether the court acquired and properly exercised personal jurisdiction over the defendant as executor under the testator's will in light of the undisputed fact that he held his appointment by order of a Connecticut probate court.[1] We hold that in the particular circumstances of this case the court acquired and properly exercised personal jurisdiction.

We set forth the rather lengthy procedural history of the case.

The plaintiff sought to commence the action by a writ dated July 16, 1964, which recited that the defendant had a usual place of business in Boston and was the executor of the estate of James Stewart Rooney, late of Boston. After several unsuccessful attempts at service, the deputy

---

[1] Other issues raised in the bills of exceptions are based on the assumption that the court did not have personal jurisdiction over the defendant as executor when the action was commenced. In view of our holding to the contrary we do not reach these issues. The only question presented which is not related to the underlying jurisdictional issue is whether the claim is barred because of failure to comply with the Connecticut nonclaim statute (Conn. Gen. Stat. § 45-205 [1975]). For the reasons set forth in point 3 of the text the issue is not properly before us.

sheriff served the defendant in hand on December 23, 1964, in Massachusetts. The defendant filed a special appearance. He also filed a plea in abatement alleging that the testator was domiciled in Connecticut on the date of his death; that the defendant had been appointed executor under the testator's will by a Connecticut probate court; that the defendant had not been appointed the testator's legal representative in Massachusetts; that the testator owned no real estate in Massachusetts; and that the defendant, as executor under the testator's will, was subject to suit only in Connecticut. In addition the defendant filed a special demand for proof under G. L. c. 231, § 30, calling on the plaintiff to prove that the defendant was an executor. After a hearing thereon a judge of the Superior Court overruled the plea in abatement on February 10, 1966. The defendant excepted to the ruling and to the admission at the hearing of evidence that the testator was domiciled in Massachusetts prior to and at the time of his death. He then filed his first bill of exceptions.

With the permission of the trial court the defendant, on March 4, 1966, filed his answer denying the allegations in the complaint and repeating the allegations in the plea in abatement. On October 21, 1968, the defendant, by leave of court, amended his answer by raising the Statute of Frauds (G. L. c. 259, §§ 1 and 5), and the statute of limitations (G. L. c. 260, §§ 2 and 9).[2] On October 8, 1968, the case was referred to an auditor whose findings were not to be final. The auditor, after a hearing, filed his report on March 12, 1969. He made extensive subsidiary findings, on the basis of which he concluded that the testator had agreed to leave the plaintiff one-half his estate in his will if she would work for him full time, that he failed to make any provision for her in his will, and that the plaintiff was

---

[2] There is no issue before us under the Statute of Frauds. In light of our determination that the court acquired jurisdiction when the defendant was served on December 23, 1964, seventeen months after the date of the testator's death (July 16, 1963), there is no question that the action was commenced within the six-year time limit fixed by G. L. c. 260, § 2.

entitled to payment for work she had performed for him pursuant to an oral employment agreement they had made in 1945. He further concluded that the plaintiff had fully performed her part of the agreement but the testator had not, that the testator had violated his agreement and that the plaintiff was entitled to recover $74,921.18 for the services rendered by her.

The plaintiff, on January 15, 1971, moved for an order of notice for service on the defendant under the long arm statute, G. L. c. 223A, which took effect on August 24, 1968. See *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 682 (1970). The motion was allowed and the order of notice issued. On February 6, 1971, the notice was served by registered mail on the judge of the Connecticut probate court where the will was being probated; on February 8, 1971, it was served on the defendant by registered mail. The defendant excepted to the allowance of the motion and filed his second bill of exceptions.

On January 27, 1972, a judge of the Superior Court denied the defendant's motion (filed on October 23, 1970), wherein he sought to amend his answer so as to allege that the plaintiff's action was barred by the short statute of limitations, G. L. c. 197, § 9, and, alternatively, that the plaintiff's claim was barred because it was not filed within the time allowed by the probate court in Connecticut under Connecticut law. The defendant filed a claim of exception, but failed to file a bill of exceptions.

In April, 1972, trial was held before a judge of the Superior Court sitting without a jury. The plaintiff offered the auditor's report and rested. The defendant filed a motion to amend his answer to allege that the plaintiff had not filed her claim within the time limited by the probate court in Connecticut for exhibiting claims as required by § 45-205 of the Connecticut General Statutes (1975). The defendant also filed a motion to strike the auditor's report on the ground that the court lacked jurisdiction.[3] Both

---

[3] The motion may be fairly read as attempting to raise the additional ground that the plaintiff's claim is barred because she failed to file her

motions were taken under advisement. The defendant introduced the testator's will. He also introduced documentary evidence showing that a Suffolk County public administrator had been appointed administrator of the testator's estate on July 30, 1964; that the public administrator found no assets belonging to the testator; and that on August 3, 1971, a judge of the Probate Court for Suffolk County allowed the public administrator's first and final account. The defendant offered no other evidence. He then filed ten requests for rulings. The issues sought to be raised by the requests were (a) whether the defendant could be held liable as executor where he was not appointed executor in Massachusetts; (b) whether the order of notice under G. L. c. 223A, the long arm statute, was properly issued and served; and (c) whether the plaintiff's claim was barred because of her failure to exhibit her claim in Connecticut in accordance with the provisions of the Connecticut nonclaim statute.

On October 12, 1972, the court denied the defendant's motion to amend the answer and his motion to strike the auditor's report, denied the defendant's requests for rulings, and ordered judgment for the plaintiff on the auditor's report. The defendant excepted to these actions and filed his third bill of exceptions.

We summarize those facts found by the auditor material to the fundamental issue whether the court had properly exercised personal jurisdiction over the defendant as executor under the will of the testator even though he was appointed by a Connecticut probate court.

From 1944 to 1946, the testator, a graduate of Harvard Medical School, served as executive officer at the United States Naval hospital in Springfield. From 1946, when the testator was released from military service, until 1956, he was associated as a pathologist with many Massachusetts hospitals, did work for many insurance companies

claim in the Connecticut probate court within the time limited by the court pursuant to the provisions of the nonclaim statute, Conn. Gen. Stat. § 45-205 (1975). However, as we indicate in point 3 of the text, the issue is not properly before this court.

and other corporations, and served as an expert witness. In 1956 he gave up his consulting work with all but one hospital, but continued his work as an expert witness. The testator's medical and consulting practice, to the date of his death on July 16, 1963, was conducted entirely in Massachusetts. During the period 1946 to the date of his death, he lived at various addresses in Cambridge and Boston. In 1948 he acquired a farm in Vermont, where his wife and son lived. He sold the farm and in 1958 purchased a house in Connecticut. As long as the testator was physically able to travel, he visited his wife and son on weekends at the Vermont farm and the Connecticut house. He spent seventy-five per cent of each week in Boston. From some time in the early 1940's until his death the testator owned an automobile, registered in Massachusetts and garaged in Boston. All the testator's stock dealings and investments were made with brokers in and around Boston. Some accounts were for stock held jointly by the testator and his wife and listed both Massachusetts and Connecticut addresses; stock in the testator's account carried the Connecticut address. In 1958 the testator registered to vote in Connecticut and voted once, in 1960. The testator considered Boston his home, for it was there that he lived, had his business and had his friends. The Connecticut house was for his wife and son, who had not lived with the testator in the Boston area since 1956. Funeral services for the testator were held in Boston, and he was cremated there.

The plaintiff met the testator in 1944 at the Naval hospital in Springfield where she was employed as a secretary. In August, 1945, the testator and the plaintiff entered into an oral agreement whereby the plaintiff would resign her employment and become personal secretary to the testator, who expected to be released from the Navy almost immediately enabling him to return to private practice in Boston. The parties agreed to all material terms of employment. From October, 1945, until January, 1948, the plaintiff worked part time for the testator while employed full time in other positions in the Boston area. The

testator did not pay her for this work. In the summer of 1946, after the testator's release from the military service, the plaintiff asked for her pay, and the testator replied she would get her money. In January, 1948, the plaintiff became employed full time as the testator's secretary at an amount less than agreed. About this time the testator agreed that he would pay her the money he owed under the 1945 agreement. In March, 1949, the plaintiff took another full-time position but continued to work for the testator on a part-time basis.

In August, 1949, the testator, in a conversation at the Massachusetts women's hospital, told the plaintiff that he had just been appointed administrator of the hospital and needed her to work for him full time again. To induce the plaintiff to accept, the testator agreed that he owed her about $6,000 for work she had performed since 1945, and that the 1945 agreement was still in effect. He told her that he had stock worth over $500,000, and that if she returned to his employ he would leave her one-half his estate. In reliance on this agreement the plaintiff returned to full-time employment as the testator's private secretary in September, 1949. She worked full time for the testator until June, 1956. During these years the testator paid the plaintiff substantially less than agreed in 1945.

In June, 1956, the testator told the plaintiff he was planning to retire, but wanted her to provide him with part-time services. He said that this would not affect his will providing one-half his estate to the plaintiff. From August, 1956, to the date of the testator's death, the plaintiff worked full time for various employers and part time for the testator. In Cambridge, two weeks before the testator died, and again at the Deaconess hospital a short time later, the testator told the plaintiff that he had taken care of her in his will.

In 1960, the testator executed a will and in 1961, a codicil. The will was admitted to probate in a Connecticut probate court. The plaintiff was not mentioned in the will. The defendant, a Brookline resident who had practiced law in Massachusetts for many years, was appointed

executor by the probate court in Connecticut. The defendant was not appointed in any fiduciary capacity by any Massachusetts court in connection with the testator's estate. The defendant found no assets of the testator in Massachusetts. On August 1, 1963, the probate court in Connecticut issued a "Solvent Notice" limiting and allowing six months for creditors to exhibit their claims against the estate. The plaintiff filed her notice of claim with that court on July 23, 1964.

1. The defendant contends that as a foreign executor he is not subject to suit in Massachusetts in the absence of statute. This is the general rule in Massachusetts. *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, 23 (1935). *De-Veer* v. *Pierson*, 222 Mass. 167, 174-175 (1915). *Beaman* v. *Elliot*, 10 Cush. 172, 173 (1852). *Borden* v. *Borden*, 5 Mass. 67, 77 (1809). G. Newhall, Settlement of Estates § 70 (4th ed. 1958). It is also the general rule in a majority of the States. *Burrowes* v. *Goodman*, 50 F.2d 92 (2d Cir.), cert. denied, 284 U.S. 650 (1931). Annot., 77 A.L.R. 251, 255 (1932). Cf. *McAndrews* v. *Krause*, 245 Minn. 85, 90 (1955). Annot., 53 A.L.R.2d 323, 328-331 (1957). Restatement (Second) Conflict of Laws § 358 (1971). However, the rule has been severely criticized. Note, The Amenability to Suit of Foreign Executors and Administrators, 56 Colum. L. Rev. 915 (1956). Currie, The Multiple Personality of the Dead: Executors, Administrators, and the Conflict of Laws, 33 U. Chi. L. Rev. 429 (1966). To protect local creditors and to prevent a failure of justice, courts in some States have created exceptions to the rule. Thus suits against foreign personal representatives have been allowed where the decedent left assets in the forum State or where the foreign administrator or executor appeared voluntarily in the suit. *Sylvania Indus. Corp.* v. *Lilienfeld's Estate*, 132 F.2d 887, 891 (4th Cir. 1943). *McAndrews* v. *Krause, supra* at 90-91. See cases collected in 77 A.L.R. 251, 255-256 (1932), 53 A.L.R.2d 325-328 (1957), and Restatement (Second) Conflict of Laws § 358, at 426-427 (1971). Even if these exceptions were recognized in Massachusetts, we do not consider them because of the au-

ditor's finding that the testator left no assets here and the fact that the defendant as executor has not appeared voluntarily in this action.

The original basis for the rule was that a foreign executor had no authority to act outside the State where he was appointed. *Brown* v. *Boston & Me. R.R.,* 283 Mass. 192, 195 (1933). *Langdon* v. *Potter,* 11 Mass. 313, 314 (1814). Thus he lacked the capacity to bring suit in Massachusetts. *Gallup* v. *Gallup,* 11 Met. 445, 447 (1846). He also lacked the capacity to be sued here. Any judgment rendered against him in Massachusetts was considered a nullity. *Borden* v. *Borden, supra* at 76. However, the rule has not been rigidly applied. It has long been held that in order to raise the issue that a party lacked the capacity to sue as administrator or executor because he had been appointed by a court of another State, the defendant had to plead the matter in defense. In the absence of such pleading, the plaintiff could maintain the action in his representative capacity. *Dearborn* v. *Mathes,* 128 Mass. 194 (1880). This rule exists apart from the statutory provision that the allegation that a party is an administrator or executor shall be taken as admitted unless the party disputing it shall file a special demand for its proof. G. L. c. 231, § 30.[4] *Boudreau* v. *New England Transp. Co.,* 315 Mass. 423, 426-427 (1944). Contrary to language in the *Borden* case, we have stated that an action is *not* a nullity where a live party is before the court and the only question is whether the party was there in his capacity as administrator or executor. *Ibid.* Even where it appeared at trial that a party was in fact a foreign administrator or executor

---

[4] The statute was amended by St. 1973, c. 1114, § 163, which became effective on July 1, 1974. The amendment made § 30 inapplicable to the Superior Court. On the same date, the Massachusetts Rules of Civil Procedure, 365 Mass. 730 (1974), took effect. Rule 9 (a) replaced § 30. The rule provides, in material part, that "[i]t is not necessary to aver ... the authority of a party to sue or be sued in a representative capacity .... When a party desires to raise an issue as to ... the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." *Id.* at 751.

we have refused to disturb a verdict on that basis where
the party's lack of capacity was not specially pleaded.
*Boutillier* v. *Wesigner,* 322 Mass. 495, 496-497 (1948).

We are aware that the defendant filed a special demand
for proof that he is executor under the testator's will,
thereby placing on the plaintiff the burden of proving that
fact. On establishment of that fact and the additional fact
that the defendant held his appointment from a Connec-
ticut probate court, the general rule insulating foreign ex-
ecutors from suit would ordinarily apply even though the
defendant lived and worked in Massachusetts and the
cause of action arose here. However, such perfunctory
application of the rule is not required, for the rule is not
based on the absence of jurisdiction. See *Beaman* v. *Elliot,*
10 Cush. 172, 173 (1852). As one critic observed, the rule
arises out of "the unwillingness of the courts of one state
to recognize an administrator appointed in another."
Amenability of Foreign Administrators to Suit Under
Non-Resident Motorists Statutes, 57 Yale L.J. 647, 652
(1948). Therefore, the State may authorize suits against
a foreign personal representative if the court has judisdic-
tion over him.

The General Court has exercised this authority with
respect to suits arising out of motor vehicle accidents.
Demonstrating its disfavor with the rule immunizing for-
eign personal representatives from suit, the General Court
amended G. L. c. 90, § 3A (providing for service of process
on the Registrar of Motor Vehicles in an action against a
nonresident motorist who is involved in an accident in
Massachusetts) by expressly declaring that substitute
service applies not only to the nonresident motorist but
also to his executor or administrator.[5] St. 1952, c. 125. We

---

[5] The legislative intent was to make certain that one sustaining in-
jury or damages in Massachusetts caused by the operation of a motor
vehicle by a nonresident should have "the opportunity to seek redress
in our own courts rather than to be remitted to bringing an action out-
side the Commonwealth wherever jurisdiction might be found, a cir-
cumstance which might render illusory the right to sue." *Toczko* v.
*Armentano,* 341 Mass. 474, 477 (1960). The General Court has demon-
strated its intent to permit foreign representatives to be sued in Massa-

have construed the statute as amended to apply to a foreign administrator who had been appointed by a Connecticut probate court, had not been appointed by a Massachusetts probate court, and whose intestate had left no assets in the Commonwealth. *Toczko* v. *Armentano,* 341 Mass. 474 (1960). In that case, the defendant, relying on the ancient rule that the appointment of an administrator in one State has no force in another, argued that the amendment to § 3A violated the due process clause and the equal protection clause of the Fourteenth Amendment to the United States Constitution. We stated that such considerations were not relevant to the issue of constitutionality (*id.* at 477), and that the only constitutional issue was whether the court had personal jurisdiction over the administrator. Jurisdiction under the statute was grounded on implied consent, by the nonresident motorists' use of Massachusetts roads, to the appointment of the Registrar of Motor Vehicles as his agent to receive service of process. This jurisdictional basis was upheld by the Supreme Court of the United States against attack under the due process clause of the Fourteenth Amendment. *Hess* v. *Pawloski,* 274 U.S. 352 (1927).

In the instant case there is no question that the court had personal jurisdiction over the defendant as executor of the testator's estate. The basis of jurisdiction permitted in the *Hess* case, implied consent, has given way to the

chusetts in other kinds of suits. See G. L. c. 223A, the long arm statute, which in § 3 provides that a court may exercise personal jurisdiction over a person who has had certain contacts with Massachusetts and in § 1 defines "person" to include "an individual, his executor, administrator or other personal representative ... whether or not a citizen or domiciliary of this commonwealth. . . ." See also St. 1976, c. 515, § 22, inserting in the General Laws a new c. 199A, which provides in § 9 that "a foreign personal representative shall be subject to the jurisdiction of the courts of the commonwealth to the same extent that his decedent was subject to jurisdiction immediately prior to death." The act was approved on October 27, 1976, and it takes effect on July 1, 1978. The provision is almost identical to § 4-302 of the Uniform Probate Code, adopted in Alaska, Arizona, Colorado, Florida, Idaho, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Dakota, and Utah. 8 Uniform Laws Ann. at 504 (Master ed. 1972), see also Supp. 1976 at 71.

more realistic ground of minimum contacts. In order to acquire personal jurisdiction over a defendant, without violating the due process clause, it is now essential that he have "certain minimum contacts" with the forum State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945) (quoting in part from *Milliken* v. *Meyer,* 311 U.S. 457, 463 [1940]). *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 222 (1957). Cf. *Hanson* v. *Denckla,* 357 U.S. 235, 250-251 (1958). See *Ross* v. *Ross, ante,* 439, 441 (1976). Unquestionably, the testator had sufficient contacts with Massachusetts to allow the court to exercise personal jurisdiction over him. The contract between the plaintiff and the testator was made and performed in Massachusetts. The testator resided in Massachusetts and practiced medicine here from the date the contract was made, in 1945, until his death in Massachusetts in 1963. The facts that he spent weekends with his wife and son in Vermont and Connecticut, was registered to vote in Connecticut, and recited in his will that he lived in Connecticut are of no legal consequence since the other contacts with Massachusetts were more than adequate to allow the court to exercise jurisdiction. See *International Shoe Co.* v. *Washington, supra* at 320. See also *McGee* v. *International Life Ins. Co., supra* at 223. Cf. *Hanson* v. *Denckla, supra* at 251-254. Had the plaintiff commenced the action against the testator when he was living, the court would have had personal jurisdiction over him. See *Wood* v. *Wood,* 369 Mass. 665, 671-672 (1976). That he died before the action was commenced and his executor was appointed by a Connecticut court does not alter the court's jurisdiction since the defendant executor was served in hand in Massachusetts, where he lived and practiced law.

Having determined that the court had personal jurisdiction over the defendant as executor under the testator's will, we fail to perceive any sound reason why the general rule granting immunity to foreign executors should shield

the defendant from suit in Massachusetts, where the parties lived and worked, where they made the contract, where they intended the contract to be performed, and where the plaintiff carried out her part of the agreement. The defendant has not shown how the exercise of jurisdiction here will unduly interfere with the jurisdiction of the Connecticut probate court or impose any inequitable burden on the defendant. *Laughlin & McManus* v. *Solomon*, 180 Pa. 177, 179 (1897). We perceive none.

We hold that the court acquired jurisdiction over the defendant as executor under Dr. Rooney's will when service was made on him in Massachusetts on December 23, 1964, and that the court properly exercised jurisdiction. Hence, the judge did not err when he overruled the defendant's plea in abatement. The exceptions in the defendant's first bill of exceptions are overruled.[6]

2. In view of our determination that jurisdiction over the defendant was acquired and properly exercised in 1964 we need not consider the defendant's second bill of exceptions, which challenges the court's issuance under G. L. c. 223A of an order of notice in 1971. The result which we reach in this case is in no way based or dependent on that order of notice.

3. In his third bill of exceptions the defendant attacks the denial of his motion to strike the auditor's report, his motion to amend his answer, and his requests for rulings.

The defendant sought to raise the question of lack of jurisdiction in his motion to strike the auditor's report. He also sought in that motion to raise the question whether the plaintiff's claim was barred by Conn. Gen. Stat. § 45-205 (1975), the Connecticut nonclaim statute. Even assuming that these issues are properly raised by such a

---

[6] The defendant also excepted to the admission, at the hearing on the plea, of evidence of the testator's connections with Massachusetts. The defendant argues, in effect, that the evidence was offered to prove domicil, an issue not material to the question before the judge. However, the evidence was properly admitted to prove the testator's substantial contacts in Massachusetts, a matter relevant to the issue whether the court could exercise personal jurisdiction over the defendant.

motion, the first has been resolved by our holding that the court had and properly exercised jurisdiction, and the second is not before this court because the statute was not pleaded. The exception to the denial of the motion to strike the auditor's report is overruled.

The claim that the court erred in denying the defendant's motion to amend his answer, filed at the trial in April, 1972, and denied on October 12, 1972, is without merit. By this motion, the defendant sought to amend his answer by adding the defense of Connecticut's nonclaim statute. The judge did not abuse his discretion by denying the motion. The defendant had previously moved to amend his answer by adding the same defense on October 23, 1970,[7] but the motion was denied on January 27, 1972. While the defendant filed a timely claim of exception he did not file a bill of exceptions. Consequently, as the plaintiff correctly points out, the judge's ruling on the motion filed on October 23, 1970, became the law of the case. See *Beacon Mfg. Co.* v. *Barnard Mfg. Co.*, 261 Mass. 397, 401 (1927). The judge's action in denying the subsequent motion to amend, therefore, was governed by the ruling made on the first. Since the Connecticut nonclaim statute, like Massachusetts's short statute of limitations (G. L. c. 197, § 9), is an affirmative defense which is not available unless pleaded, the defendant is foreclosed from relying on the Connecticut nonclaim statute. See *Gallo* v. *Foley*, 299 Mass. 1, 3 (1937); *Raymond* v. *Bailey*, 98 Conn. 201, 208-209 (1922).

The defendant's exception to the denial of his motion to amend the answer is overruled.

The third bill of exceptions also challenges the judge's denial of the defendant's ten requests for rulings. Requests Nos. 1, 9, and 10 raise issues not argued by the defendant and are therefore deemed waived. Mass. R. A. P. 16 (a)

---

[7] In material part the motion read: "[T]he plaintiff's claim was not filed within the time permitted by said Probate Court of the District of Woodbury under the law of Connecticut." Although the language differs from the wording in the motion of October 12, 1972, the issue sought to be raised is the same.

(4), as amended, 367 Mass. 919 (1975). The other requests raise the same issues as the plea in abatement, the motion for an order of notice under G. L. c. 223A, and the October 12, 1972, motion to amend the answer. We have resolved these issues above in favor of the plaintiff. Consequently, the exceptions are overruled.

*Exceptions overruled.*