Garsh, J.
A third-party defendant, Teleflex Inc. (“Teleflex”), brings this motion to preclude Checker Taxi Company (“Checker”) from offering any expert testimony and to dismiss Checker’s claims for indemnification and contribution. For the reasons stated below, the motion to exclude evidence is allowed in part, and the motion to dismiss is denied.
BACKGROUND
On December 17,1990, a Checker taxi was involved in a three-car accident. The taxi was manufactured by third-party defendant General Motors Corporation (“General Motors”). The throttle cable within the engine was manufactured by Teleflex.
Plaintiff promptly filed a complaint for equitable relief seeking an order preserving the vehicle as evidence. Such an order was entered on December 28, 1990. Before the order was entered, on the day following the accident, Mark McCarty (“McCarty”), Checker’s chief mechanic, unhooked the throttle cable off the throttle shaft for inspection purposes.
General Motors was told about the accident by Checker on January 9,1991, and given an opportunity to inspect the vehicle. General Motors representatives did so inspect on several occasions, albeit not technical personnel. On March 28, 1991, Checker obtained a court order permitting it to dispose of the vehicle.
On April 9, 1991, Checker’s retained expert, Dyer Carroll (“Carroll”), conducted a technical inspection of the vehicle. He ordered the removal of the throttle cable from the vehicle. Carroll did not photograph or document the precise location of the cable in the engine prior to having it removed. During the last week of April or the first week of May, Checker had the taxi destroyed.
Three months later, Checker impleaded General Motors, alleging that the throttle cable was defective. General Motors moved to preclude the testimony of Carroll and McCarty and to dismiss the claims against it because of spoliation of evidence. That motion was denied. With respect to McCarty’s actions, the court found that “it was by no means unreasonable for Checker to conduct a preliminary investigation to try to ascertain what occurred and that the simple disconnection and reassembly of a connection between the throttle cable and the throttle body assembly was neither negligent nor deliberate . . .” As for the destruction of the vehicle, the court found that General Motors had notice of a serious accident involving a vehicle it had manufactured, a “more than adequate opportunity to inspect the vehicle with whatever technical expert assistance they wished,” and notice that Checker intended to destroy the vehicle.
Checker did not seek to add Teleflex as a third-party defendant until March 23, 1993. Its motion initially was denied. After Checker settled, in August of 1993, all of the personal injury claims arising out of the accident, Checker sought reconsideration of its motion to add Teleflex as a third-party defendant. At that time, Checker’s motion to add Teleflex was allowed.
General Motors’ expert witness, Arthur Spease (“Spease”), is an employee of Teleflex. He was retained for this case by General Motors in September of 1992, more than a year after the destruction of the taxi by Checker. Teleflex did not become aware of the accident until Spease’s assistance was sought by General Motors in the late summer of 1992.[1] There is no evidence that, before the taxi was destroyed, Teleflex was aware of the accident, given an opportunity to inspect the vehicle, or advised of Checker’s intent to destroy the taxi. Before the vehicle was destroyed, Checker suspected a problem with the acceleration cable.
DISCUSSION
Fairness may require the exclusion of relevant evidence where its probative value is far exceeded by its potential for improper and highly prejudicial effect. Green v. Richmond, 369 Mass. 47, 60-61 (1975). In Nolly v. Volkswagen, 405 Mass. 191 (1989), the Supreme Judicial Court recognized the evidentiary importance of physical items themselves and the precise condition they were in immediately after the accident. Id. at 197. The Court held that the sanction for spoliation of relevant evidence is as follows:
[I]n a civil case, where an expert has removed an item of physical evidence and the item has disappeared ... in such circumstances that the expert knows or reasonably should know that that item in its original form may be material to litigation, the judge, at the request of a potentially prejudiced litigant, should preclude the expert from testifying as to his or her observations of such items before he or she altered them and as to any opinion based thereon.
Id. at 197-98.
Checker destroyed an item of physical evidence which it knew or reasonably should have known may be material to the product liability issues in this case.[2] Indeed, Checker’s own expert testified that “(t]here are a lot of little things that you can find out by examining [the component parts] in the vehicle as opposed to out of the vehicle.” Checker would have an unwarranted advantage in having its expert render any opinion based upon his observations or testing of the throttle cable or any other part as it existed in the vehicle, whether that opinion is offered to prove that the cable was defective or to eliminate other possible causes of the accident. Accordingly, Checker’s expert may not testify as to his observations or testing of the cable or *242 any other part before the vehicle was destroyed or as to any opinion based thereon. Because this court has already ruled that General Motors is not entitled to the same sanction, the claim against Teleflex will be severed and proceeded with separately. M.R.Civ.P. 21.
To the extent that Teleflex seeks total preclusion of all expert testimony, its motion is denied. Teleflex has an expert who is prepared to opine that the throttle cable did not contribute to the accident based upon his own physical examination of the cable, x-rays, and the testimony of the expert for the plaintiffs who manipulated the cable while it was intact. There is, moreover, much evidence as to the effectiveness of the breaking system. Teleflex has demonstrated that the destroyed vehicle is material, but not crucial, .to its defense. In these circumstances, rather than precluding Checker from offering any expert testimony, it is appropriate to limit that testimony and to permit Teleflex to present evidence as to what kind of inspection would have been conducted by its expert(s) or observations made had the vehicle not been destroyed. Teleflex may also seek a jury instruction to the effect that if the jury finds that the vehicle would have been subjected to inspection and testing by Teleflex, the jury may infer that the evidence destroyed would have disclosed facts adverse to Checker. On this record, such a sanction is sufficient to cure the prejudice that may have been sustained by Teleflex.
The motion to dismiss is premised upon exclusion of all of Checker’s expert evidence. Because that sanction has not been adopted, the motion to dismiss is denied. It may be, however, that with the limitations now placed upon Checker’s expert, Checker will be unable to meet its burden of demonstrating more than the possibility or chance of a product defect or the existence of a causal connection between the negligence of Teleflex, if any, and the injuries for which Checker now seeks indemnification or contribution. If Teleflex is of the view that, with the limitations ordered herein, Checker has insufficient evidence to permit a jury to conclude that the occurrence of the harm was more likely or probably due to the negligence of Teleflex than to some other cause for which Teleflex is not responsible, or that the defect existed when the product left Teleflex, Smith v. Ariens Co., 371 Mass. 620, 626 (1978), or that the cable has not been handled improperly after leaving control of Teleflex, Coyne v. John S. Tilley Co., Inc., 368 Mass. 230, 236 (1975), Teleflex has leave of court to move for summary judgment within thirty days.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1. Teleflex’s Motion is Dismiss is DENIED;
2. Checker’s expert may not testify as to his observations or testing of the cable or any other part before the vehicle was destroyed or as to any opinion based thereon;
3. The claim against Teleflex is severed for trial from the claim against General Motors;
4. Teleflex is entitled to a jury instruction that the juiy may infer that the evidence destroyed by Checker would have disclosed facts adverse to Checker if Teleflex introduces expert testimony as to the type of inspection that would have been performed in these circumstances;
5. Teleflex may file a motion for summary judgment within thirty (30) days.

After the hearing, Teleflex submitted an affidavit of its Manager for Product Safety Assurance stating that Teleflex did not become aware of the subject matter of this suit until it was contacted in the late summer of 1992 by General Motors about Spease’s availability to attend a meeting to inspect the throttle cable involved in the accident. The filing of the affidavit was triggered by the court’s inquiry as to when Teleflex had learned of the accident. That inquiry was prompted by Checker’s argument that General Motors’ knowledge should be imputed to Teleflex. Checker contends that the affidavit should be disregarded because of Teleflex’s alleged failure to comply with a Rule 30(b)(6) deposition notice of Teleflex. The deposition of Spease, proffered by Checker, does not demonstrate a bad faith failure to comply with the Rule 30(b)(6) notice. That notice requested a deponent be produced with knowledge regarding “[a]ll matters relevant to Teleflex, Inc.’s allegation that it has been prejudiced by alleged spoliation of evidence of the subject of evidence of the subject vehicle . . .” That language is vague. Because it was not disputed that Checker gave Teleflex no notice of the accident before the destruction of the taxi. Teleflex presumably reasoned that the precise date it learned of the accident was not relevant. When Spease was questioned regarding notice of the accident, he responded, “Specifically, I don’t know.” This issue was not pursued further by Checker.

Checker’s evidence shows no more than a buyer-purchaser relationship between Teleflex and General Motors. There are no facts that would warrant imputing, as a matter of law, General Motors’ knowledge to Teleflex.