AILEEN E. WOODCOCK & another[1] vs. AMERICAN
INVESTMENT COMPANY & others.[2]

Suffolk. March 9, 1978. — August 16, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, & LIACOS, JJ.

*Limitations, Statute of. Jurisdiction,* Nonresident. *Conflict of Laws,*
Statute of limitations.

Claims in a complaint brought by corporate shareholders against the company and certain of its past and present officers and directors alleging that six years or more prior to the action large sums of money belonging to the company were used and converted for criminal, illegal, and ultra vires purposes were barred by the two-year statute of limitations on tort actions under G. L. c. 260, § 2A, inserted by St. 1948, c. 274, § 2, where there were no allegations of fraudulent concealment or the existence of inherently unknowable causes of action. [173–174]

---

[1] Lyle S. Woodcock was also an original plaintiff. The complaint was dismissed as to him, and he has not appealed. In September, 1975, one Joseph C. Ebel, the father of the plaintiff Aileen E. Woodcock, was added as a plaintiff, and, following his death in 1976, Lyle S. Woodcock, executor of Ebel's will, was substituted as a plaintiff.

[2] The other defendants named in the complaint are Donald L. Barnes, Jr., chairman of the board of the defendant company; Erwin A. Stuebner, a director of the company; Harry W. Hartley, a former director and officer; Norfleet H. Rand, a director; W. Benton McMillan, a former director; Basil L. Kaufmann, a director; Henry R. Barber, a director; Louis W. Menk, a former director; Robert J. Brockmann, president and a director; R. Bruce Snow, a former director and officer; J. Miller Redfield, a former senior officer; William F. Heath, a former senior officer, Albert J. O'Brien, a director; and Warren E. Van Norman, a director, secretary and general counsel. Following the death of Barnes, his executors were substituted as defendants.

A complaint by shareholders alleging misuse of corporate funds was an action in tort, not an action in contract. [174–176]

Under the provisions of G. L. c. 260, § 9, a claim based on breach of contract against defendants who were not residents of the Commonwealth was barred where it was not brought within the period of the statute of limitations imposed by the State in which the plaintiffs resided. [176–177]

BILL IN EQUITY filed in the Superior Court on June 3, 1974.

The suit was heard by *Adams*, J., on motions to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Daniel F. Featherston, Jr.*, for Aileen E. Woodcock & another.

*Verne W. Vance, Jr. (William J. Cheeseman* with him) for the American Investment Company & others.

*Walter J. Hurley,* for William F. Heath, joined in a brief.

WILKINS, J. The plaintiffs appeal from a judgment dismissing their complaint for failure to state a claim on which relief could be granted. The plaintiffs, residents of Missouri and long-time shareholders of the defendant American Investment Company, a Delaware corporation (company), brought this action on May 31, 1974, against the company and certain of its past and present directors and officers. We affirm the judgment on the ground that the plaintiffs' claims were barred by the statute of limitations.

We summarize the relevant allegations of the amended complaint. On April 27, 1973, counsel for the plaintiffs wrote to the president and chairman of the board of directors of the company about disclosures made in the Massachusetts "small loans" cases concerning the use of the company's funds to bribe officials in Massachusetts and in other States. He asked what legal steps the company had taken to recover these illegally expended funds, and, if the company had taken no action, demanded that the

company proceed against six named individuals.[3] By letter, dated May 18, 1973, the secretary and general counsel of the company replied that the company had commenced no action against the named individuals. He asked for certain additional information, and stated that without further "facts sufficient to substantiate the serious charges you have made," he could not consider recommending a positive course of action to the company's board of directors. On May 22, 1973, the plaintiffs' counsel answered that the substantiating facts were "contained in the transcripts of the testimony of many witnesses before the Massachusetts Crime Commission, special grand juries, and the Suffolk Superior Court in the course of the, so-called, 'Small Loans Cases.' " He again demanded the institution of suit. On June 26, 1973, the company's secretary and general counsel wrote to counsel for the plaintiffs that at the board's June meeting, the "disinterested 'outside directors,' constituting a majority of the Board," voted that "the Board of Directors, having given careful consideration to the matters raised in certain correspondence . . . , believe the suit [the plaintiffs' counsel] demands would not be in the best interest of the Company and declines to bring said suit."[4]

The complaint alleges that as of September 1, 1975, the company had approximately 10,400 voting stockholders who reside in every State and many foreign countries; that the company's shares are listed for trading on the

---

[3] These individuals were Donald L. Barnes, Jr. (the recipient of the letter), the estate of one Lawrence M. Curtiss, R. Bruce Snow, Harry W. Hartley, J. Miller Redfield, and William F. Heath. Of these, all but the estate of Curtiss are defendants.

[4] Because we conclude that the plaintiffs' action is barred by the statute of limitations, we need not decide whether the good faith vote of the disinterested directors is itself a complete bar to the action. See Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974). See also *Dunphy* v. *Traveller Newspaper Ass'n*, 146 Mass. 495, 497-498 (1888); *United Copper Sec. Co.* v. *Amalgamated Copper Co.*, 244 U.S. 261, 263-264 (1917); *Miller* v. *A.T.&T. Co.*, 507 F.2d 759, 762 (3d Cir. 1974); *Gall* v. *Exxon Corp.*, 418 F. Supp. 508, 516, 518, 520 (S.D.N.Y. 1976).

New York Stock Exchange; that the present directors, officers, and the defendants own or control approximately 10% of the company's outstanding voting stock; that the plaintiffs do not have sufficient funds to solicit the shareholder votes necessary for a special meeting of stockholders or for a "proxy fight to authorize the conduct of this action"; that in the circumstances "it is almost impossible for any stockholder minority to muster sufficient support for the action sought"; and that any notice to shareholders "would be a pointless and impossibly burdensome task, and should be excused as a condition precedent to the prosecution of this action."[5]

The complaint alleges that during the years 1963 through 1968, agents of the company testified in the "small loans" cases that "large sums of money belonging to ... [the company and its subsidiaries] were used and converted for criminal, illegal, and *ultra vires* purposes," and that the illegal use of corporate funds was "a breech [*sic*] of the fiduciary and other duty owed by the individual defendants and others." The complaint specifically alleged the use of corporate funds, directly or indirectly, to bribe a "Deputy Banking Commissioner of the Commonwealth of Massachusetts," to entertain members of the Commonwealth's Small Loans Regulatory Board, and to

---

[5] Again, we need not decide whether a demand on the company's shareholders is excused in these circumstances. The Massachusetts Rule of Civil Procedure 23.1, *supra*, requires that a complaint in a shareholder derivative action allege "with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors ... and, if necessary, from the shareholders ..., and the reasons for his failure to obtain the action or for not making the effort." The plaintiffs argue that if Massachusetts law (cf. *S. Solomont & Sons Trust, Inc.* v. *New England Theatres Operating Corp.*, 326 Mass. 99 [1950]) requires a prior demand for action on corporate shareholders, unless the demand would be futile, it is inapplicable to the company because the company is a Delaware corporation and Delaware law should govern any requirement of a demand on corporate shareholders. They also argue that shareholders cannot ratify ultra vires acts and that, in any event, demand should be excused as unduly burdensome and unnecessary in the circumstances.

bribe members of the Legislature. It further alleged that certain corporate funds had been retained by some of the individual defendants rather than used for the ostensible illegal purposes. The plaintiffs alleged, on information and belief, that individual defendants made similar illegal use of corporate funds in other States as part of a "studied, knowing, sophisticated, wholesale raid on the corporate treasury." The plaintiffs sought the repayment of all funds found to be justly due the corporation.

The defendants filed motions to dismiss on the ground that the amended complaint failed to state a claim on which relief could be granted, relying in part on the claim that the statute of limitations had run before the complaint was filed. These motions were allowed without specification of reasons and, as we have said, judgment was entered accordingly for the defendants.

We start with an analysis of precisely what alleged wrongs to the company lie at the base of the plaintiffs' derivative action. The allegations of the complaint cannot fairly be read as presenting any claim for recovery of any illegal payment or misappropriated corporate funds other than those disclosed in the course of the so called "small loans" cases in Massachusetts. The complaint substantially exceeds the scope of the demand on the directors, which lacks the necessary particularity to support a shareholder derivative action based on other circumstances, such as illegal conduct in other jurisdictions, or an action against any defendant not mentioned in the demand. See 3B Moore's Federal Practice par. 23.1.19, at 23.1-81 (2d ed. 1978); 7A C. A. Wright & A. R. Miller, Federal Practice and Procedure § 1831, at 377 (1972); 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5963, at 360 (rev. perm. ed. 1970). See also *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir.), cert. denied, 414 U.S. 857 (1973).

All claims of the company based on tort theories are barred by the then applicable Massachusetts two-year statute of limitations on tort actions. G. L. c. 260, § 2A,

inserted by St. 1948, c. 274, § 2. See G. L. c. 260, § 2A, as amended by St. 1973, c. 777, § 1, which now provides a three-year period for tort actions arising on and after January 1, 1974. *Id.* § 4. On the allegations, the statute of limitations began to run before the plaintiffs learned of the wrongful acts. Fraudulent concealment which would support a tolling of the statute is not alleged. See G. L. c. 260, § 12. The allegation that the misuse of corporate funds was "criminal, illegal, and *ultra vires*" does not support a claim of fraudulent concealment. There are no allegations of positive acts of concealment or of the existence of inherently unknowable causes of action. See *Friedman* v. *Jablonski*, 371 Mass. 482, 485 n.3, 486-488 (1976); *Hendrickson* v. *Sears*, 365 Mass. 83, 90 (1974). Nor is there any basis for a claim of fraudulent concealment by directors who may have had a fiduciary duty to disclose the causes of action. See *Samia* v. *Central Oil Co.*, 339 Mass. 101, 113 (1959). The corporate wrongs were disclosed in testimony of corporate officers from 1963 through 1968. This allegation rebuts any possible implication that the corporate causes of action were concealed. All the alleged wrongs occurred before 1969, and the action was not commenced until May, 1974. We turn then to the question whether any of the claims alleged is founded in contract.

The plaintiffs assert, without citation of apt authority, or the presentation of any reasoning, that shareholder derivative actions are governed by the six-year contract statute of limitations. G. L. c. 260, § 2. The appropriate statute of limitations appears logically to be that governing the corporate claim which the shareholder pursues derivatively. See 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5886, at 231 (rev. perm. ed. 1970); 6 Z. Cavitch, Business Organizations § 119.02[1](1), at 119-9 (1977). Here, the allegations of the complaint rest on a claim of conversion of funds, plainly a tort claim. Any implication of a breach of contract by any officer or director of the company is belied by the allegation that

the misuse of corporate funds was a studied, knowing raid on the corporate treasury which, apart from any tort theory, suggests at the most a contractual arrangement among certain officers and employees calling for the bribing of certain public officials for the benefit of the company. Even a free reading, to which in this respect a complaint in a shareholder derivative action may be entitled under the Massachusetts Rules of Civil Procedure, fails to disclose any claim for breach of contract which the company had against any present or former officer or director.

Even if we were to read the complaint as alleging a corporate claim for breach of contract, it fails to state any breach of contract occurring within six years prior to May, 1974. The disclosures in the "small loans" cases were made by the company's officers during the years 1963 through 1968. The implication is that the wrongdoing, and any consequent breaches of contract, occurred before 1963, and certainly not as late as June through December, 1968 (the only period of the alleged disclosures lying within six years prior to May, 1974).[6]

The plaintiffs, however, contend that they may rely on the defendants' wrongs committed more than six years prior to May, 1974, because of a tolling of the statute of limitations. As to any such wrongs which were torts, it will be seen that clearly the statute was not tolled so as to permit maintenance of this derivative action. The same result obtains as to contract claims, although the

---

[6] Our opinion in *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972), discloses that the indictments in the "small loans" cases were returned in 1964. *Id.* at 200. The first trial began in July, 1966, and the second in July, 1967. *Id.* at 201. The evidence concerned alleged conspiracies to bribe public officials during the years 1957-1963. *Id.* at 201-202. Although these facts are not disclosed in the complaint, both the demand on the directors and the complaint allege that the corporate claims are founded on facts disclosed in the "small loans" cases of which the plaintiffs claim the company had knowledge.

reasons for that conclusion require greater explanation.

The plaintiffs argue that (1) the statute of limitations was tolled because all the individual defendants, except one, were not residents of the Commonwealth at any material time[7] and could not be sued in this Commonwealth until the "long arm statute" became effective in August, 1968 (see St. 1968, c. 760, inserting G. L. c. 223A; *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 682 [1970]), and (2) that action was commenced within six years of the effective date of that statute. General Laws c. 260, § 9, excludes periods of the defendants' nonresidence in determining the time limited for the commencement of an action,[8] but it bars any action which is barred by the State of the plaintiffs' residence. Thus, assuming a complaint alleges a contract claim, the law of a plaintiff's place of residence might impose a lesser period to institute an action than the six-year period which Massachusetts would otherwise apply, and the action would be barred if not brought in that lesser period.

The parties agree that Missouri law applies in this situation and that Missouri would apply a five-year statute of limitations to an action for breach of contract.[9] Mo.

---

[7] The defendant Heath was an alleged resident of the Commonwealth, and the plaintiffs' tolling argument must fail as to him. All the remaining individual defendants were alleged to be residents of Missouri, except (a) Stuebner and Barber (Illinois), (b) Menk (Minnesota), and (c) Redfield (California).

[8] The plaintiffs rightly acknowledge that, when service may be obtained on a nonresident, the tolling provisions of G. L. c. 260, § 9, are inapplicable. See *Walsh* v. *Ogorzalek*, 372 Mass. 271, 273 n.3, 274-275 (1977). Thus on the effective date of G. L. c. 223A, any tolling of the statute under G. L. c. 260, § 9, as to the nonresident defendants in this case ceased. More than two years passed between the effective date of G. L. c. 223A in 1968, and the commencement of the action in 1974. Thus any tort claim was barred by the statute of limitations.

[9] Because the plaintiffs are residents of Missouri and the company has its principal offices there, we need not decide whether under G. L. c. 260, § 9, the statute of limitations of the place of residence of the derivative plaintiffs or that of the company's place of business, or both, should be applied.

o

Rev. Stat. § 516.120 (1969). In the absence of fraud or deception, a claim for breach of contract accrues in Missouri before the aggrieved party discovers the claim. See *Chemical Workers Basic Union Local 1744* v. *Arnold Sav. Bank*, 411 S.W.2d 159, 164-165 (Mo. 1966); *McCandlish* v. *Estate of Timberlake*, 497 S.W.2d 191, 195 (Mo. App. 1973). Thus, even if the plaintiffs here have alleged a derivative claim based on a breach of contract, this action was commenced more than five years after the cause of action accrued, and the Missouri five-year statute of limitations, applicable pursuant to G. L. c. 260, § 9, bars the maintenance of this action.

The judgment for the defendants is affirmed. In view of our conclusion on the plaintiffs' appeal, we need not decide issues raised in the appeal of the defendants Redfield and Snow, consolidated with the plaintiffs' appeal, from an order which, pursuant to Mass. R. Civ. P. 27 (b), 365 Mass. 777 (1974), granted the plaintiffs leave to take certain depositions pending appeal. That appeal shall be dismissed as moot.

> *Judgment for the defendants affirmed.*
>
> *Defendants' appeal dismissed as moot.*