Natalie DOYLE and Gerald
Doyle, Plaintiffs,

v.

Gerald A. SHUBS, M.D., Defendant.

Civ. A. No. 87–2278–WD.

United States District Court,
D. Massachusetts.

July 12, 1989.

Delphis R. Jones, East Greenwich, R.I.,
L. Barry Tinkoff, Jeffrey S. Entin, Sahady,
Entin & Entin, Fall River, Mass., for plaintiffs.

Edward T. Crossen, Morrison, Mahoney
& Miller, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This medical malpractice action against
Dr. Gerald Shubs, arises from a hysterectomy he performed on Natalie Doyle in February, 1980. Since the operation, Ms.
Doyle's medical condition has substantially
deteriorated despite a number of additional
surgical procedures. She has lost control
over the functioning of her bowels and has
been in constant pain.

This action was not commenced, however, until December 2, 1986 when the complaint was filed in the District of Rhode
Island. Plaintiffs' counsel moved on July
22, 1987 to transfer the case to the District
of Massachusetts stating in their motion:

> The only reason why this action commenced in the Federal Court for the District of Rhode Island was for the convenience of plaintiff's [sic] former counsel,
> then a Rhode Island practicing attorney,
> and because the defendant was believed
> to be living in Rhode Island, although
> service of process was never made upon
> him.

After the motion to transfer was allowed on September 14, 1987, the case was filed in this court on September 15, 1987. When no proof of service had been received, a Conditional Order of Dismissal was entered on January 6, 1988, pursuant to Fed.R. Civ.P. 4(j), notifying counsel that the case would be dismissed within 20 days unless proof of service was filed or good cause was shown. A request for additional time to effect service filed January 21, 1988 was granted permitting 45 days to file proof of service. On March 7, 1988 the summons was returned showing service on the defendant on February 29, 1988.

As required by statute, the case was submitted to a medical tribunal for a hearing on the question of negligence. Mass. Gen.L. ch. 231, § 60B. The tribunal held a hearing on November 30, 1988, but has not yet rendered a decision.[1] Dr. Shubs has moved for summary judgment on the ground that the statute of limitations bars both Ms. Doyle's claim and her husband's claim for loss of consortium.

### I

At the outset, I must confront a question concerning the propriety of hearing the summary judgment motion before the medical tribunal has rendered its decision.

The function of the medical tribunal in Massachusetts is to "determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." Mass.Gen.L. ch. 231, § 60B; *see DiGiovanni v. Latimer*, 390 Mass. 265, 268–9, 454 N.E.2d 483 (1983).

■ Whether the claim is barred by the statute of limitations is not an issue within the jurisdiction of the tribunal, but is to be

raised before the court. *McMahon v. Glixman*, 379 Mass. 60, 67–8, 393 N.E.2d 875 (1979).[2] When the issue may be determined by the court is less clear.

■ Section 60B requires that the tribunal "evaluate only the medical aspects of a malpractice claim," *Salem Orthopedic Surgeons, Inc. v. Quinn*, 377 Mass. 514, 521, 386 N.E.2d 1268 (1979), and determine whether evidence exists sufficient to defeat the equivalent of a directed verdict motion by a defendant. *DiGiovanni*, 390 Mass. at 269, 454 N.E.2d 483. The statute does not expressly require that the parties submit to the tribunal before the court can consider *any* of their claims or defenses.

There is no statutory language mandating, nor have the Massachusetts courts interpreted the statute as requiring, exhaustion of the tribunal process before any dispositive question of law may be heard by the court. Because § 60B was enacted with a view toward controlling medical malpractice insurance costs, *Salem Orthopedic*, 377 Mass. at 517, 386 N.E.2d 1268, consideration of motions that might dispose of the claims as a matter of law at the earliest possible time would be consistent with the intent of the legislature.

While there are no cases directly addressing the court's authority to hear motions prior to a finding by the tribunal, state courts have routinely entertained such motions without objection. *See, e.g., Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 277, 475 N.E.2d 727 (1985) (court granted partial summary judgment and directed verdicts before referring surviving malpractice claims to tribunal); *McMahon*, 379 Mass. at 62, 393 N.E.2d 875 (motion for summary judgment heard and denied prior to submission to tribunal).

---

**1.** Apparently at that hearing, the presiding judge appointed a special master to investigate the plaintiffs' allegations, taking the matter under advisement in the interim.

**2.** At the hearing before me in this matter, plaintiffs' counsel represented to the court that the medical tribunal, which had been convened to address Ms. Doyle's negligence claim, was also considering the statute of limitations issue. The

court allowed counsel ten days in which to submit an affidavit in accordance with Fed.R. Civ.P. 56(f) to support this representation. Thereafter, counsel acknowledged by letter that they could make no such representation, and instead filed an affidavit raising an entirely new objection to the summary judgment motion. *See generally infra* Section III.

I therefore conclude that it is appropriate for this court to consider defendant's summary judgment motion, notwithstanding the pendency of the proceeding before the tribunal. I now turn to the merits of the underlying motion.

## II

■ In medical malpractice actions brought in federal court pursuant to diversity jurisdiction, the state statute of limitations applies. *See generally Buckley v. American Honda Motor Co., Inc.,* 780 F.2d 1 (1st Cir.1985). In Massachusetts, suits for medical malpractice must be commenced within three years "after the cause of action accrues." Mass.Gen.L. ch. 260, § 4.

Massachusetts has adopted the "discovery rule" for medical malpractice claims, acknowledging that "a plaintiff should be put on notice before his claim is barred." *Franklin v. Albert,* 381 Mass. 611, 619, 411 N.E.2d 458 (1980). The rule established by the Supreme Judicial Court ("SJC") is that "a cause of action for medical malpractice does not 'accrue' . . . until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct." *Id.* at 612, 411 N.E.2d 458. The SJC has emphasized that the "discovery rule" applies only to "inherently unknowable" causes of action. *Flynn v. Associated Press,* 401 Mass. 776, 781, 519 N.E.2d 1304 (1988). The discovery rule was created in order to avoid the "manifest injustice" of punishing "blameless ignorance" on the part of a plaintiff. *Franklin v. Albert,* 381 Mass. at 618, 411 N.E.2d 458.

Thus the statute of limitations begins to run "when a reasonably prudent person (in the tort claimant's position), reacting to any suspicious circumstances of which he might have been aware . . ., should have discovered that he had been harmed by his physician's treatment." *Malapanis v. Shirazi,* 21 Mass.App.Ct. 378, 383, 487 N.E.2d 533 (1986).

The plaintiffs suggest in their brief that the "discovery rule" renders the relationship between Ms. Doyle's injury and her medical treatment inherently unknowable until she had "actual knowledge of any malpractice or negligence of the defendant." Plaintiffs' Memorandum in Opposition to Summary Judgment at 5. That overstates the applicable law. The First Circuit, in a holding later approved by the Supreme Judicial Court, could

> find no indication in Massachusetts law that the notice necessary to start the statute running includes notice that defendant has breached a legal duty to plaintiff. The only indications are to the contrary. The statute does not begin to run until plaintiff knows he has been injured 'as a result of conduct of defendants.' But knowledge that he has been injured by *negligent* conduct is something more and different.

*Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 199 (1st Cir.1983) (citation omitted) (emphasis in original), *approved, Fidler v. E.M. Parker Co.,* 394 Mass. 534, 545, 476 N.E.2d 595 (1985). Hence, "discovery of the exact legal theory upon which a claim of malpractice can be based is not among the inherently unknowable facts that will operate to delay the accrual of a cause of action." *Malapanis,* 21 Mass.App.Ct. at 388, 487 N.E.2d 533.

■ On an appropriate record, summary judgment may be granted on the question when the applicable statute of limitations begins to run. *Fidler v. E.M. Parker,* 394 Mass. at 545–46, 476 N.E.2d 595; *Malapanis,* 21 Mass.App.Ct. at 383, 487 N.E.2d 533. The sole question before me is thus when, on this record, it appears Ms. Doyle—and her husband for purposes of his loss of consortium claim—reasonably should have learned that she had been harmed as a result of the hysterectomy and other abdominal surgery performed by Dr. Shubs. Alternatively stated, the question is when the harmful consequences of the conduct of Dr. Shubs in treating Ms. Doyle ceased to be inherently unknowable.

Ms. Doyle's hysterectomy took place in February, 1980. As early as April, 1980, when she began experiencing pains and loss of bladder control, Dr. Shubs said: "What must have happened is that when a

drain was taken out, your bladder must have adhered to your stomach wall." Doyle Affidavit at 2. He referred her to Dr. Kaiser, a urologist, who, at Ms. Doyle's first visit in April, 1980, "[i]nstantaneously" made a connection between her recent hysterectomy and her urinary incontinence. Kaiser Deposition at 15–17. Dr. Kaiser further stated in his deposition that he and Ms. Doyle "discussed several times in the office that her bladder difficulties were related to complications from her hysterectomy." *Id.* at 43–44.

These various indications from others observing a link between Ms. Doyle's condition and the performance of the 1980 hysterectomy were clearly sufficient to put a "reasonably prudent person" in her position on notice of that connection. Moreover, Ms. Doyle herself made a similar observation over three years prior to filing this action.

In March, 1983, Ms. Doyle submitted a complaint to the Massachusetts Board of Registration in Medicine, in which she wrote:

All that I can say is I had none of these problems before the hysterectomy. As far as I am concerned the doctor should have been more careful. [T]here is no way a hole could have gotten into my bladder except by surgery. I have Xrays showing a normal bladder before the operation and Xrays showing a large hole after operation [sic].

Exhibit C to Defendant's Memorandum in Support of Summary Judgment. Her awareness of the connection between her injury and the hysterectomy as exhibited by this letter was itself sufficient to begin the running of the statute of limitations.

III

■ Following the hearing on the summary judgment motion, plaintiffs' counsel raised an entirely new issue in opposition to summary judgment on statute of limitation grounds. Contending that "after further extensive investigation" it was learned that Dr. Shubs resided out of state for a substantial portion of the period in which the statute of limitations was running,[3] the

3. Plaintiffs' counsel had not earlier shown any particular diligence in conducting their investigation on plaintiffs' claims. The approach taken is demonstrated in the following excerpt from the Memorandum in Opposition to the Motion to Strike The Affidavit of Plaintiff's Counsel and For Reasonable Expenses ("Memorandum in Opposition to Motion to Strike") at 1–2, submitted by plaintiffs' counsel:

The Plaintiff had originally retained counsel, L. Barry Tinkoff and Delphus Jones, an attorney who was practicing in Rhode Island, on March 25, 1983. It was then presumed that Dr. Schubs [sic] was living and/or practicing in the state of Rhode Island. The Plaintiff continued being treated by Dr. Kaiser, a urologist, in Fall River, Massachusetts. In response to a letter sent by then attorney Delphus Jones, Dr. Kaiser sent a letter August 2, 1986 stating that the Plaintiff's injury was a result of complications from the surgery performed by Dr. Schubs [sic] in early 1980. As alleged, this is the first time the Plaintiff became aware that there had been malpractice by the Defendant. As a result, a complaint was filed in the United States District Court for the District of Rhode Island in December of 1986. It was then determined that the Defendant was not in fact in Rhode Island and that his whereabouts at the time were unknown. Sometime in 1987 Attorney Delphus Jones left the State of Rhode Island with the Plaintiff's file. To the knowledge of coun-

sel, he has never returned, and in fact was disbarred and prevented from practicing law in the State of Rhode Island. Counsel L. Barry Tinkoff then joined with Counsel, Jeffrey S. Entin and the case was subsequently entered in the United States District Court for the District of Massachusetts and an effort was made to locate the Defendant for the purpose of serving the appropriate court process. It was not until late October of 1987 as a result of articles that appeared in the Providence Journal Bulletin and the Fall River Herald News, which stated that the Defendant had not resided or practiced medicine in the Rhode Island or Massachusetts area since August of 1983, at which time he entered a psychiatric residency or training program and consequently started to practice psychiatry in Cincinnatti [sic], Ohio. Therefore, it wasn't until February 29, 1988, approximately 14 months after the case was entered in the Rhode Island District Court that service was made. Neither Plaintiff nor Plaintiff's counsel had any knowledge as to the location of the defendant.

Whether this course of conduct by counsel comes within the "degree of care and skill of the average qualified practitioner" in Massachusetts, *Fishman v. Brooks*, 396 Mass. 643, 646, 487 N.E.2d 1377 (1986); *Pongonis v. Saab*, 396 Mass. 1005, 486 N.E.2d 28 (1985); *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass.App.Ct. 107, 111, 515 N.E.2d 891 (1987), is

plaintiffs have for the first time asserted that the statute of limitations has been tolled on grounds of the defendant's out of state residence. Mass.Gen.L. ch. 260, § 9 suspends the running of the statute "if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth." The period of residence outside Massachusetts is to be excluded from the computation of time for purposes of the statute's bar.

The Supreme Judicial Court has identified the purpose of this ancient tolling statute—enacted well before the recognition of long arm jurisdiction—as an effort "to prevent a potential defendant from insulating himself from liability by placing himself for a time beyond the reaches of the law for purposes of service." *Walsh v. Ogorzalek*, 372 Mass. 271, 274, 361 N.E.2d 1247 (1977). In light of this purpose, the SJC has construed ch. 260, § 9 narrowly to apply only to "a person who by reason of nonresidence is beyond the jurisdiction and process of the court." *Id.* "[W]hen service may be obtained on a nonresident, the tolling provisions of G.L. c. 260, § 9, are inapplicable," *Woodcock v. American Investment Co.*, 376 Mass. 169, 176 n. 8, 380 N.E.2d 624 (1978) (citing *Walsh*, 372 Mass. 271, 361 N.E.2d 1247), because "[f]or purposes of § 9, a defendant is considered a resident of Massachusetts if he is subject to service of process in the Commonwealth." *Wilcox v. Riverside Park Enterprises, Inc.*, 399 Mass. 533, 534 n. 3, 505 N.E.2d 526 (1987); *see also Pahlavi v. Palandjian*, 638 F.Supp. 9, 11 (D.Mass.1985), *aff'd*, 809 F.2d 938 (1st Cir.1988).

Unlike the circumstance when § 9 was enacted, the courts of the Commonwealth now have jurisdiction pursuant to the Massachusetts "long arm" statute, Mass. Gen.L. ch. 223A, § 3(c), over an individual who commits a tort within the state. Mass. Gen.L. ch. 223A, § 4 authorizes service of process to be made on any individual over whom personal jurisdiction may be asserted. It is undisputed that Dr. Shubs is subject to the jurisdiction of the courts of the Commonwealth—and thereby of this

court through diversity jurisdiction—under the long arm statute.

In *Walsh*, the SJC limited its holding—that ch. 260, § 9 applies *only* to nonresidents "beyond the jurisdiction and process" of the Massachusetts courts—to cases "where the name and location of the defendant are known to the plaintiff. The period of limitations may be tolled in a case where, for a time, that information is not available to the plaintiff." 372 Mass. at 275, 361 N.E.2d 1247. It appears, then, that tardiness in commencing litigation will be excused only when it results from the plaintiff's lack of knowledge of the defendant's whereabouts. A more indulgent reading of *Walsh* would achieve what the SJC expressly sought to avoid; it "would allow suits to be postponed indefinitely, for no good purpose, and to be brought in some cases at the virtually unlimited pleasure of the plaintiff." *Id.* at 274, 361 N.E.2d 1247.

The SJC has instructed that the extent of a plaintiff's knowledge and the availability of information regarding the whereabouts of a defendant "could conceivably be a question of fact for a judge and might even require the hearing of evidence where the issue is disputed." *Id.* at 275, 361 N.E.2d 1247. A hearing, however, is not required in this case.

I will assume for present purposes that the defendant was out of state for a material period of time prior to the filing of the complaint but after the statute of limitations began running. Moreover, the plaintiffs' counsel contend that they were unable to locate him until fourteen months after their complaint was filed in the District of Rhode Island, where they assumed he resided. Memorandum in Opposition to Motion to Strike at 2, *supra* note 3. However, the plaintiffs have alleged no facts to support—indeed they do not even suggest—the argument that the timing of the complaint's filing was in any way affected by a lack of knowledge of where the defendant lived. In fact, the memorandum filed by their counsel undermines this argument. In that Memorandum, they point out that it

not before me in this *medical* malpractice ac-    tion.

was only when service of process was attempted that the plaintiffs discovered that Dr. Shubs was no longer in Rhode Island. Memorandum in Opposition to Motion to Strike at 1. The plaintiffs thus effectively concede that their failure to commence suit in a timely manner was not connected to their lack of knowledge concerning the defendant's whereabouts.[4] Accordingly, the plaintiffs' belated reliance upon § 9 as a ground to avoid the statute of limitations is unavailing.

## CONCLUSION

For the reasons set forth above, the Massachusetts statute of limitations for medical malpractice actions bars the claims of both plaintiffs,[5] and summary judgment is hereby ALLOWED for the defendant.

---

4. It is, therefore, not necessary to address the question whether, in circumstances—unlike those here—where lack of knowledge of the defendant's whereabouts does cause delay in the filing of the litigation, the plaintiff must demonstrate diligence in locating the defendant in order to derive benefit from § 9. Under such circumstances, the courts, in order to encourage plaintiffs to commence litigation in a timely manner by locating defendants promptly, may choose to place a further gloss on *Walsh* by requiring the plaintiff claiming § 9 protection to show that the defendant's name or location could not reasonably have been known within the statutory period. Such a gloss would be consistent with the purpose behind such service of process rules as the presumptive 120 day requirement for service embodied in Fed.R. Civ.P. 4(j), which permits *sua sponte* dismissal by the court of actions when parties and their counsel have been less than diligent in prosecuting causes of action. *See generally Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1558 (1st Cir.1989). Indeed, in this case, it bears emphasizing that it was only because a Conditional Order of Dismissal was entered in this court pursuant to Fed.R.Civ.P. 4(j) that plaintiffs' counsel actually began meaningful inquiry to locate and serve the defendant.

5. Summary Judgment is appropriate for Mr. Doyle's claim for loss of consortium. While the record is not explicit on this point, it appears the Doyles were living together throughout the period from Ms. Doyle's surgery to the present. If Ms. Doyle knew by March 3, 1983, at the latest, that Dr. Shubs' conduct was responsible for her medical condition, it "tests credulity" that Mr. Doyle did not make that connection. *See Gore v. Daniel O'Connell's Sons, Inc.,* 17 Mass.App.Ct. 645, 648, 461 N.E.2d 256 (1984) (denying wife's claim on statute of limitations grounds when husband's condition had been linked to head injury). Mr. Doyle, "in the exercise of reasonable diligence, should have known of the factual basis for a cause of action" in March, 1983 at the latest. *Id.* at 647, 461 N.E.2d 256. If he was indeed ignorant of that factual basis, "it [was] an ignorance which ought hardly to be characterized as blameless." *Id.* at 648–49, 461 N.E.2d 256. His claim is accordingly barred by the three year statute.