Natalie DOYLE, et al.,
Plaintiffs, Appellants,

v.

Gerald A. SHUBS, M.D.,
Defendant, Appellee.

Nos. 89–2109, 90–1035.

United States Court of Appeals,
First Circuit.

Heard May 9, 1990.

Decided May 31, 1990.

Jeffrey S. Entin, with whom Sahady, Entin & Entin, P.C., Fall River, Mass., was on brief, for plaintiffs, appellants.

Charles H. Yelen, with whom D. Alice Olsen and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for defendant, appellee.

Before SELYA and CYR, Circuit Judges, and ROSENN,* Senior Circuit Judge.

PER CURIAM.

These are appeals from the district court's grant of summary judgment rejecting a medical malpractice claim against Dr. Gerald A. Shubs as time barred.[1] All parties agree that Massachusetts law controls in this diversity action and that the statute of limitations governing medical malpractice claims requires that suit be brought within three years "after the cause of action accrues." Mass.Gen.L. ch. 260, § 4 (1989). The parties also agree that Massachusetts follows a discovery rule, such that a cause of action for malpractice will not accrue "until a patient learns, or reasonably should have learned, that [s]he has been harmed as a result of a defendant's conduct." *Franklin v. Albert,* 381 Mass. 611, 612, 411 N.E.2d 458, 459–60 (1980).

In appropriate cases, preclusory time bars are suitable grist for the summary judgment mill. *See, e.g., Kali Seafood, Inc. v. Howe Corp.,* 887 F.2d 7, 9 (1st Cir.1989); *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989). The question before us, then, is whether this case was appropriate. The answer to the question depends on whether the record reflects a "genuine issue as to any material fact," Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986), relative to timeliness of suit. Throughout, we bear in mind that

---

* Of the Third Circuit, sitting by designation.

1. There are actually two plaintiffs: Natalie Doyle (the alleged malpractice victim) and her husband, Gerald Doyle (who sues for loss of consortium). Appellants did not argue in the district court or on appeal that the husband's

claim stands on a different temporal footing. For simplicity's sake, therefore, we treat the appeals as if Natalie Doyle were the sole plaintiff-appellant. Our resolution, of course, binds both appellants.

parties confronted by a Rule 56 motion cannot rest on "conjectural or problematic" argumentation, *Mack*, 871 F.2d at 181, but must set forth evidence which is "significantly probative" of specific material facts. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990) ("a mere promise to produce admissible evidence at trial does not suffice to thwart ... summary judgment ...").

The district court, obviously troubled by plaintiff's all-too-apparent victimization at the hands of more than one profession, wrote at length to explain its grant of summary judgment in defendant's favor, *Doyle v. Shubs*, 717 F.Supp. 946 (D.Mass. 1989), and its dismay at the quality of Mrs. Doyle's representation, *Doyle v. Shubs*, 721 F.Supp. 379 (D.Mass.1989), *order on motion to amend*, 729 F.Supp. 918 (D.Mass. 1989). Hence, we offer a barebones version of the material facts, leaving the reader who hungers for more exegetic detail to peruse the opinions below.

■ The pivotal facts are painfully clear. Natalie Doyle became Dr. Shubs' patient in 1979. He performed a hysterectomy on February 29, 1980. Mrs. Doyle experienced serious adverse symptomatology as early as April 1980; corrective surgery was performed in June 1980 by another surgeon, on referral from Dr. Shubs, but to no avail. By March 1981, Mrs. Doyle was debilitated, incontinent, pain-wracked, and largely disabled. Two additional operations (late 1981, early 1982) did not improve her condition (which has steadily continued to worsen). Shortly before March 3, 1983, Mrs. Doyle wrote an undated letter to the Massachusetts Board of Registration in Medicine (the Board), complaining bitterly

about Dr. Shubs. In that letter, she described the hysterectomy, her deteriorating state since the operation, and the failed attempts to correct the fistula that had developed. Among other things, she wrote:

> All that I can say is I had none of these problems before the hysterectomy. As far as I am concerned the doctor should have been more careful. [T]here is no way a hole could have gotten into my bladder except by surgery. I have Xrays showing a large hole after operation.

She also said she was writing so that Dr. Shubs "will never do this to anyone else." Later that month, Mrs. Doyle retained not one, but two, attorneys, L. Barry Tinkoff and Delphis R. Jones. For reasons never satisfactorily explained, suit was not commenced until December 2, 1986.

Like the district court, we believe it is self-evident from these undisputed facts that, by March 1983, plaintiff was acutely aware of the connection between the hysterectomy and her symptomatology. Once Mrs. Doyle knew the cause-and-effect relationship, no more was needed under Massachusetts law to wind the limitations clock.[2] *See Kay v. Johnson & Johnson*, 902 F.2d 1, 2 (1st Cir.1990) (per curiam); *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 199 (1st Cir.1983), *approved, Fidler v. E.M. Parker Co.*, 394 Mass. 534, 545, 476 N.E.2d 595, 602 (1985); *Franklin, supra; Malapanis v. Shirazi*, 21 Mass.App.Ct. 378, 383–88, 487 N.E.2d 533, 537–40 (1986). Because no suit was brought within three years next following March 3, 1983 (the date when the Board received plaintiff's letter), the action is time barred.

Although the merits of the suit require us to go no further, we feel compelled to add a brief eschatocol. The district court

2. Before us, plaintiff's present counsel lamely asserted that the complaint letter did not definitively establish the requisite knowledge and suggested that, in her agitated state, the letter merely showed Mrs. Doyle calling out in frustration and anger, but without sufficient knowledge of the situation to begin the march of time. This strikes us as wishful thinking on counsel's part—especially since Mrs. Doyle's affidavit in opposition to summary judgment exhaustively details her medical history and treatment as pertinent to this case, but nowhere attempts to explain away what was, to all intents and purposes, her clear expression of knowledge as revealed by the complaint letter. Indeed, her affidavit ignores the very existence of her complaint to the Board. Counsel's argument, unsupported, cannot create a "genuine" issue of "material" fact.

described this case as "a saga of professional neglect," 721 F.Supp. at 379, pointing out that the continuing misfortunes of a woman who likely had been provided with medical services at an unacceptable level of care and skill "raised the question whether [plaintiff] has been provided with legal services at an acceptable level of attentiveness." *Id.* at 380. To facilitate plaintiff's exploration of "other avenues of legal recourse, including direct recourse" against counsel, past and present, the district court ordered copies of its rescripts mailed directly to the client. *See id.* at 382; *see also* 729 F.Supp. at 919. Given the tragic overtones of this litigation and the close-to-inexplicable way in which it has been handled, we think that the district court's prophylactic order was well advised. We echo the court's sentiments and emulate it.

*The judgment of the district court is affirmed. The Clerk of this court is directed to mail an additional copy of this opinion to Natalie Doyle and to Gerald Doyle, at their last known address(es), by certified mail, return receipt requested.*