**Sally Ann BOHL, Individually and as Executrix of the Estate of Charles A. Bohl, Plaintiff,**

v.

**Eugene LEIBOWITZ, M.D, Defendant.**

**No. CIV.A. 95–30091–MAP.**

United States District Court,
D. Massachusetts.

March 24, 1998.

Donald W. Goodrich, James R. Loughman, Donovan & O'Connor, Adams, MA, for Plaintiff.

Ronald E. Oliveira, Dawn M. Rich, Martin & Oliveira, Pittsfield, MA, for Defendant.

## ORDER

POSNOR, District Judge.

Upon de novo review this report and recommendation is hereby adopted and the motion for summary judgment is DENIED. The defect in the capacity of the plaintiff—if any—has been properly remedied. The clerk will set a status conference.

So Ordered.

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

NEIMAN, United States Magistrate Judge.

Sally Ann Bohl ("Plaintiff") has filed a three count complaint against Eugene Leibowitz, M.D. ("Defendant"). Both Counts I, for conscious pain and suffering, and II, for wrongful death, are brought in Plaintiff's capacity as executrix of the Estate of Charles A. Bohl ("Bohl"). Count III, for loss of consortium, is brought in Plaintiff's individual capacity. Defendant pursues the instant motion for partial summary judgment on Counts I and II on grounds that Plaintiff lacked the ancillary capacity as executrix of Bohl's estate to proceed against him. That motion has been referred to the court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court recommends that Defendant's motion for partial summary judgment be denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The gravamen of Plaintiff's complaint is that Defendant undertook Bohl's care on December 8, 1993, performed surgery on him on December 15, 1993, and "negligently, carelessly and with gross negligence and in reckless disregard for the health and life of Plaintiff's testate," (Complaint ¶ 10), failed to properly examine, diagnose and treat him. Plaintiff alleges that Bohl died on December 25, 1993, as a result of Defendant's negligence. (Complaint ¶¶ 7–10).

As of the date of Bohl's death, both Plaintiff and Bohl were residents of Stamford, Vermont. (Pl. Exhibit A.) On January 14, 1994, Plaintiff filed the required bond with the Vermont Probate Court, District of Bennington, (Pl. Exhibit C), and on February 2, 1994, she was duly appointed executrix of Bohl's estate. (Pl. Exhibit A.) Defendant resides and maintains his medical practice in Massachusetts.

On April 25, 1995, Plaintiff filed her complaint in this court based on diversity of citizenship. On July 11, 1995, pursuant to the provisions of M.G.L. ch. 231, the parties filed a stipulated request to refer the action to a state medical malpractice tribunal through the Berkshire Superior Court, which District Judge Michael A. Ponsor endorsed. (Docket No. 5.) The tribunal convened on February 29, 1996, and found that "the evidence presented in accordance with Section 60B of Chapter 231, if properly substantiated is not sufficient to raise a legitimate question of liability appropriate for a judicial inquiry." (Docket No. 6.) Thereafter, pursuant to M.G.L. ch. 231, Plaintiff filed a $6,000 bond with the Berkshire Superior Court in order to pursue her claims. Defendant filed his

motion for partial summary judgment on July 7, 1997.

## II. STANDARD OF REVIEW

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992)). Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A "genuine" issue is one "that a reasonable jury could resolve ... in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (quoting *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992) (internal quotation marks omitted)). Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir. 1997) (quoting *Martinez v. Colon,* 54 F.3d 980, 983–84 (1st Cir.1995)). In cases where, as here, there is an absence of a genuine dispute of material fact, motions for summary judgment may be resolved as a matter of law. *See Jimenez v. Peninsular & Oriental Steam Nav. Co.,* 974 F.2d 221, 223 (1st Cir.1992).

## III. DISCUSSION

■ Defendant avers that partial summary judgment is appropriate on a narrow procedural ground, namely, that Plaintiff, the duly appointed executrix of Bohl's estate in the state of Vermont, failed to obtain ancillary powers as executrix in the Commonwealth of Massachusetts prior to filing suit. As a result, Defendant maintains, Plaintiff did not have the capacity to bring suit in the courts of Massachusetts. Moreover, Defen-

dant argues, Plaintiff lacked the capacity to submit an offer of proof to the medical malpractice tribunal.

It was not until July 21, 1997, well after the medical malpractice tribunal convened and issued its finding, that Plaintiff obtained her ancillary appointment in Massachusetts pursuant to M.G.L. ch. 199A § 5. It was then that she filed with the Berkshire Probate and Family Court authenticated copies of her appointment as executrix by the Vermont Probate Court, the bond originally filed with that court, and her written appointment of her attorney as the estate's resident agent in Massachusetts. (Goodrich Aff. ¶ 5 (Docket No. 22).) Defendant was first informed of the ancillary appointment on July 25, 1997, when Plaintiff filed her opposition to Defendant's motion for partial summary judgment.

### A.

Defendant's motion is grounded in an ancient rule of law prohibiting a foreign executor or administrator to sue in Massachusetts on behalf of the foreign estate which she represents. *See Brown v. Boston & M.R. Co.,* 283 Mass. 192, 186 N.E. 59, 60 (1933). *Brown* stands for the settled proposition "that the appointment of an administrator in one state confers no power beyond the limits of that state, and does not authorize him to maintain any suit in the courts, state or national, held in any other state." *Id.* at 60 (citations omitted). In essence, the court continued, "an administrator appointed in a foreign state is not a personal representative of the estate in any other state." *Id.* Administrators and executors are, for the purposes of this proposition, synonymous. *Id.*[1]

Although Defendant relies on *Brown* as the cornerstone of his motion, he somewhat inaccurately characterizes existing law. While still generally applicable in Massachusetts and other states, the *Brown* rule has not been rigidly applied. *Saporita v. Litner,* 371 Mass. 607, 358 N.E.2d 809, 814 (1976). In addition, several states have created exceptions to the rule, for example, when the decedent "left assets in the forum state or

1. Pursuant to Fed.R.Civ.P. 17(b), the law of the forum state, here Massachusetts, determines a representative's capacity to sue in the federal district court.

where the foreign administrator or executor appeared voluntarily in the suit." *Id.* at 813 (citing cases). One erosion of *Brown* in Massachusetts occurred with the passage of the Omnibus Probate Act ("Act"), St.1976 ch. 515 § 22, which provides, in applicable part, that a foreign executor shall be subject to the jurisdiction of Massachusetts courts "to the same extent that his decedent was subject to jurisdiction immediately prior to his death." M.G.L. ch. 199A § 9. *See Saporita*, 358 N.E.2d at 815. *See also Martel v. Stafford*, 992 F.2d 1244, 1247 (1st Cir.1993); *Steego Corp. v. Ravenal*, 830 F.Supp. 42, 48 (D.Mass.1993); *Moore v. Healy*, 745 F.Supp. 791, 793 (D.Mass.1990).

The Act also allows a foreign executor to maintain suit in Massachusetts under certain conditions. Thus, "a domiciliary foreign personal representative may file with a probate court in the commonwealth in a county in which property is located, authenticated copies of his appointment and any official bond he has given." M.G.L. ch. 199A § 5. A representative who has complied with section 5 "may exercise as to personal property in the commonwealth all the powers of a local personal representative acting in a similar representative capacity and may maintain actions and proceedings in the commonwealth...." M.G.L. ch. 199A § 6. Together, these provisions provide an expedited method by which an executrix may obtain an ancillary appointment in the Commonwealth. *Compare Bliss v. Bliss*, 221 Mass. 201, 109 N.E. 148, 150 (1915) (describing process of appointment by the probate court).

There is, however, no interpretive case law involving suits by an administrator appointed pursuant to this statute. Certain questions thus remain unsettled, for example, whether the term "property" in both sections 5 and 6 include such personal "assets" of the estate as are reflected in a wrongful death claim. Nonetheless, Defendant does not challenge the proposition that, upon receiving an ancillary appointment, an executrix can maintain just such a suit as is at issue here, *Brown* notwithstanding. In view of Defendant's concession, therefore, the court will take as settled for this case that, had Plaintiff had the ancillary appointment when she filed suit, she had the power to maintain the action. Regardless, Defendant asserts that Plaintiff did not in fact have that ancillary capacity when she commenced suit or when she proceeded before the medical malpractice tribunal. That Plaintiff has since cured the deficiency in her ancillary appointment, Defendant maintains, is of no benefit to her now.

### B.

 Historically, a defendant was required to affirmatively file a special demand for proof of representative capacity if he was alleging a lack of such capacity on the part of a plaintiff. *Boutillier v. Wesinger*, 322 Mass. 495, 78 N.E.2d 195, 196 (1948). Absent such a filing, executrix capacity was presumed admitted. *Id.* However, the statute which mandated that procedure was repealed in 1975. *See* M.G.L. ch. 231 § 30. Since, "[t]he rules of civil procedure require that a party wishing to raise the lack of capacity to sue— or be sued—must do so by specific and particularized negative averments if the issue is raised in the principal pleadings." *Orion Ins. Co. v. Shenker*, 23 Mass.App.Ct. 754, 505 N.E.2d 561, 562–63 (1987) (citing Mass. R.Civ.P. 9(a)). Thus, under the current iteration, a lack of capacity must be raised as an affirmative defense. *Id.* at 563; *Saporita*, 358 N.E.2d at 814. Once pled, the defense shifts the obligation of proving such capacity to the plaintiff.

Here, Defendant did affirmatively plead a lack of executrix capacity in his answer. However, Defendant then waited, for fifteen months after the medical malpractice tribunal and a full two and one half years after originally pleading Plaintiff's lack of executrix capacity, to advance the issue. Interestingly enough, Defendant, through counsel, represented at oral argument that he would have preferred to wait even longer—until the close of all the evidence at trial—before pursuing the issue through a motion for a directed verdict. He was forced to tip his hand, Defendant asserts, only when Judge Ponsor ordered Defendant to file a motion to dismiss based on this very issue. (*See* Docket No. 17.)

The court remains unconvinced that pleading a lack of capacity and then laying in wait until the last possible moment, as Defendant suggests, is a course of action which should be approved. More to the point, it is a strategy that is not without risk, for Defendant's ongoing delay provided Plaintiff with an equally ongoing opportunity to take remedial action.

· While Defendant was not required to pursue his affirmative defense in court early in the litigation, he certainly had the opportunity to do so, even before the medical malpractice tribunal was convened. The medical malpractice statute, M.G.L. ch. 231 § 60B, "does not expressly require that the parties submit to the tribunal before the court can consider any of their claims or defenses." *Doyle v. Shubs*, 717 F.Supp. 946, 947 (D.Mass.1989). Indeed, as the court noted in *Doyle*, "[b]ecause § 60B was enacted with a view toward controlling medical malpractice insurance costs, consideration of motions that might dispose of the claims as a matter of law at the earliest possible time would be consistent with the intent of the legislature." *Id.* (citation omitted). *See also Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 475 N.E.2d 727 (1985) (court addresses partial summary judgment and directed verdict motions before referring surviving claims to tribunal); *McMahon v. Glixman*, 379 Mass. 60, 393 N.E.2d 875, 877 (1979) (motion for summary judgment heard and denied prior to submission to tribunal).

■ Moreover, when Defendant requested that Plaintiff give her offer of proof at the medical malpractice tribunal, he necessarily delayed the day of reckoning concerning Plaintiff's apparent lack of executrix capacity. Thus, the medical tribunal is only designed to assess the sufficiency of the evidence in treatment-related claims. *Little v. Rosenthal*, 376 Mass. 573, 382 N.E.2d 1037, 1040

(1978). The tribunal cannot address legal defenses or statutory bars to recovery. *See Doyle*, 717 F.Supp. at 947 (whether statute of limitations bars claim is not a question for medical tribunal); *McMahon*, 393 N.E.2d at 880–81 (same); *Salem Orthopedic Surgeons, Inc. v. Quinn*, 377 Mass. 514, 386 N.E.2d 1268, 1272 (1979) (whether parties made an express contract for medical services is beyond the competence of the medical malpractice tribunal). Thus, neither party would have been able to raise the issue of Plaintiff's capacity to sue at the tribunal.

Finally, it is somewhat disingenuous for Defendant to now claim that Plaintiff did not have the capacity to make her offer of proof in the tribunal. Defendant himself sought that very proof when, in a joint motion with Plaintiff, he affirmatively requested that Judge Ponsor refer the matter to the tribunal. *See Feinstein v. Massachusetts Gen. Hosp.*, 643 F.2d 880, 887 (1st Cir.1981).[2]

In sum, Defendant's delay provided Plaintiff with an ongoing opportunity to remedy any defect in her representative capacity. This is in fact what she did when, in response to Defendant's motion for partial summary judgment, she filed authenticated copies of her Vermont appointment with the Berkshire Superior Court, together with a copy of the bond filed in Vermont and her appointment of a resident agent for service of process pursuant to section 5 of the Act.

In this · regard, the Supreme Judicial Court's decision in *Boutillier* is instructive. The court found that the trial court committed reversible error when, in a wrongful death case, it allowed defendant's motion for a directed verdict based on the impropriety of plaintiff's appointment as executrix in another state. In essence, the Supreme Judicial Court determined that the foreign executor should have been allowed to sue for wrongful death even without an ancillary fil-

2. Plaintiff also argues, somewhat persuasively, that the *Brown* rule, barring a foreign executor from suing on behalf of a foreign estate, ought not even apply to a medical malpractice tribunal. Such tribunal, according to Plaintiff, is an administrative rather than a judicial body, i.e., the standard of review used at a hearing is consistent with the Administrative Procedure Act's 'substantial evidence' review, purely legal issues are excluded from its jurisdiction and, even after a negative determination, a claimant may pursue judicial adjudication. While the Court is unconvinced that the role of the tribunal is 'purely ministerial' as Plaintiff suggests, a survey of the case law shows that the rule in *Brown* has never been explicitly extended to non-judicial proceedings.

ing in Massachusetts. *Boutillier*, 78 N.E.2d at 196. While the court based its holding on a since repealed statutory requirement—that a defendant must timely file a demand for proof of executrix capacity in order to allege that defense—the court's rationale is nonetheless helpful. According to the court, a due appointment by the probate court in another state is not inconsistent with an appointment in Massachusetts. *Id.* Here, too, Plaintiff's appointment as executrix in Vermont was, at all relevant times, consistent with an appointment in Massachusetts.

Similarly, in *Boudreau v. New England Transp. Co.*, 315 Mass. 423, 53 N.E.2d 92, 93 (1944), the Supreme Judicial Court found that a proper suit could be maintained despite its having been commenced by one who lacked executrix capacity at the time. The only issue was whether, or more to the point when, the plaintiff could get the appropriate appointment. *Id.* at 94. Moreover, there does not appear to be any geographic limitation to filing suit inherent in wrongful death claims. *See* M.G.L. ch. 229 *et seq. Cf. Toczko v. Armentano*, 341 Mass. 474, 170 N.E.2d 703, 706 (1960) (permitting suit of a non-resident executor for wrongful death caused by a deceased non-resident operator, implying consent to suit based on the motorist statute).

The fact that the curative step respecting Plaintiff's ancillary appointment was taken only after Defendant filed his motion for summary judgment is of no moment. First, the curative act remedied the original defect; once obtained, Plaintiff's ancillary appointment should be treated as if it were in force as of the date of Bohl's death. *Cf. Kobrosky v. Crystal*, 332 Mass. 452, 125 N.E.2d 385, 391 (1955) ("Title to personal assets vest in the administrator upon his appointment and relates back to the date of death of the former owner."). Second, the court itself has the power to recognize the late appointment. *See McCandless v. Furlaud*, 293 U.S. 67, 75, 55 S.Ct. 42, 79 L.Ed. 202 (1934) ("if the validity of his appointment as ancillary receiver had been seasonably urged in the trial

court, the plaintiff might have remedied the defect ... [and] the trial court might have permitted the appropriate amendment of the bill of complaint."). *Cf. United States v. Charles George Trucking Co., Inc.*, 624 F.Supp. 1185, 1187 (D.Mass.1986) (non-movant allowed to supplement affidavits filed in opposition to summary judgment after the sufficiency of the affidavits was challenged by the opposing party).

Finally, Defendant's delay in pursuing the issue should not inure to his benefit. "When the issue is one purely of law, requiring little or no discovery, the motion [for summary judgment] should be filed early." *See William W. Schwarzer, Alan Hirsch & David J. Barrans, The Analysis and Decision of Summary Judgment Motions* 74 (Federal Judicial Center 1991). Indeed, the very scope and purpose of summary judgment is "to prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials...." 10 *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice And Procedure* § 2712 (1983). The earlier a lack of capacity defense is pursued, the more likely a plaintiff can cure any defects in capacity which may exist. Defendant's delay in advancing the issue simply delayed, but did not foreclose, the curative act. Granting partial summary judgment at this late stage of the litigation would be fundamentally unfair.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Defendant's motion for partial summary judgment be denied.[3]

December 2, 1997.

---

3. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation.